DAISY VAUGHAN, Respondent, v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, February 16, 1914.

1. NEGLIGENCE: Railroads: Personal Representative: Widow. The plaintiff, a widow, sued the defendant for the negligent death of her husband, a railroad brakeman. She sued not in the capacity of a personal representative under the Federal Law, but as a widow under the statute of Kansas. After judgment, she entered her appearance as administratrix of her husband's estate, and adopted all the acts theretofore done in the suit, as the widow. Her husband was a front brakeman, and as the train was slowing down to stop, and while he was passing from a car to his place on the engine, a sudden jerk f the train caused him to be thrown to the track and killed. Held, that the plaintiff should have sued as the personal representative under the Federal Law.

2. ———: Federal Employers' Liability Act. When a brakeman is helping to move an interstate train and is killed while being so employed, his personal representative must sue under the Federal Employers' Liability Law.

3. ———: ———: Personal Representative. Under the Federal Law a surviving widow is not entitled to recover in her own name, but only through the personal representative of the deceased.

4. PLEADING: Parties to Action: Proof: Statute. A party, suing under a statute, must bring himself in his pleading and proof

within the statutory requirements necessary to confer the right. Otherwise, his petition and his proof are insufficient to sustain his judgment. Only such persons can recover as the letter of the law prescribes and only such persons as the statute permits may sue and they alone can sue.

5. ———: ———: **Waiver.** While the Federal Act does not attempt to control State procedure, yet it does not leave State procedure so free and untrammelled as to allow such procedure to work a change in the terms of the statute. When objection to the judgment is made before it was rendered, the provisions of the Federal Law are not waived.

6. ———: ———: **Administratrix.** An administratrix having entered appearance as such before a motion for new trial is disposed of, could, after the sustaining of said motion, have proceeded to trial anew on an amended petition, which she would have a right to file as a party to the suit.

7. **EVIDENCE: Declarations: Res Gestae.** A declaration of deceased is admissible when it is made under such circumstances as to show that it was not a mere narrative of a past event, but was so connected with the cause of the accident as to form a part of the entire transaction and to grow out of it spontaneously precluding the idea that it was the result of a design. While it must be contemporaneous with the main fact, it does not have to be precisely concurrent in time.

## Appeal from Jackson Circuit Court.—*Hon. James E. Goodrich,* Judge.

REVERSED AND REMANDED.

*Cowherd, Ingraham, Durham & Morse* and *W. F. Evans* for appellant.

(1) The plaintiff's right to recover, being necessarily based on the Federal Employers' Liability Act, the petition fails to state a cause of action, and plaintiff is not entitled to recover on the whole record. Defendant was engaged in interstate commerce and plaintiff's husband was employed in such commerce. Hanley v. Railroad, 187 U. S. 617. (2) Defendant's liability must therefore be determined by the Act of Congress of April 22, 1908, commonly called the Federal Employers' Liability Act. 35 Statutes at Large, 65,

chap. 149; Second Employers' Liability Cases, 223 U. S. 1; Railroad v. Vreeland, 227 U. S. 59. (3) Since under this act suit must be brought by the personal representative, the plaintiff who has brought suit as widow has failed both to state and to establish a cause of action. Railroad v. Birch, 224 U. S. 547; Railroad v. Seale, 229 U. S. 156; Troxell v. Railroad, 227 U. S. 434; Railroad v. Wulf, 226 U. S. 570.

*Botsford, Deatherage & Creason* for respondent.

(1) The point that plaintiff did not have the capacity to sue as the widow not having been made in the pleadings or at the trial or in the motion for a new trial, comes too late to raise it after the filing of that motion. The point is as to the capacity to sue and does not raise the point of the statement and proof of a cause of action, as to which both the petition and proof are sufficient. Railroad v. Wulf, 192 Fed. 919; United States R. S., sec. 914; Stewart v. Railroad, 168 U. S. 445; R. S. 1909, secs. 1800, 1804, 2119. (2) Defendant was engaged in intrastate commerce and therefore it was a Kansas cause of action. Railroad v. Pa., 145 U. S. 192. (3) But even if the Employers' Liability Act applies and if the point had been made seasonably, it is not well taken. Stewart v. Railroad, 168 U. S. 445, and cases reviewed; Railroad v. Wulf, 192 Fed. 919; Railroad v. Wulf, 226 U. S. 570; Railroad v. Didricksen, 227 U. S. 145; R. S. 1909, secs. 1729, 1730, 2119, 1850; Jones v. Railroad, 178 Mo. 528. (4) Plaintiff below, respondent here, had the right to amend after judgment by bringing herself into the case as administratrix and adopting her proceedings, as widow. R. S. U. S., sec. 954; R. S. 1909, secs. 2120, 1851. (5) The statements of Lee Vaughan made immediately after his mortal injuries and at that very place, as to how the accident occurred, were *res gestae.* Jewell v. Powder Co., 166 Mo. App. 556; Brownell v. Railroad, 47 Mo. 244-6; Harriman v. Stowe, 57 Mo.

95; Leahy v. Railroad, 97 Mo. 168-173; State v. Martin, 124 Mo. 524-529; Stockman v. Railroad, 15 Mo. App. 515.

TRIMBLE, J.—On February 10, 1910, plaintiff, as the widow of Lee Vaughan, deceased, brought suit in the circuit court of Jackson county, Missouri, to recover $10,000 damages for the death of her husband, which occurred on February 12, 1909, and was alleged to have been caused by the negligence of defendant.

The amended petition stated that defendant owned a railway extending from Kansas City, Missouri, into the State of Kansas; that plaintiff's husband, Lee Vaughan, was in the employ of defendant as head brakeman on a freight train which defendant was operating from Kansas City, Missouri, into the State of Kansas; that both plaintiff and her husband were residents of Missouri; that her said husband was, while employed as such brakeman on said freight train, killed in the State of Kansas by certain specified acts of negligence on the part of defendant and the engineer of said train; that the statutes of Kansas, which were duly pleaded, provide that every railroad shall be liable for damages to employees in consequence of the negligence of its agents, and that, in case of the death of an employee, action may be maintained if the employee might have maintained an action had he lived, and that in all cases where the residence of the party whose death has been caused is in another State, or when being a resident no personal representative has been appointed, the action may be brought by the widow. The petition further stated that Lee Vaughan at the time of his death was a strong healthy man thirty-five years of age, with an expectancy of life of 31.78 years, and was earning ninety dollars per month, and was plaintiff's sole support, and that plaintiff was twenty-four years old at the time she lost her husband and had an expectancy of 39.49 years; that there were

no children born of their marriage and that said Lee Vaughan died without issue. The petition contained this further allegation: "That there was and has been no administration upon the estate of plaintiff's said husband, Lee Vaughan, and that no personal representative has been or now is appointed for the said Lee Vaughan, deceased, or for his estate."

The answer contained a general denial, and pleaded contributory negligence and assumption of risk.

The case was tried, and on November 22, 1911, a jury returned a verdict for plaintiff in the sum of $5000, on which judgment was rendered. Motions for new trial and in arrest were filed, and the case was continued on the motions.

On September 7, 1912, while said motions were still pending and undisposed of, plaintiff filed in said case a paper entitled, "Entry of Appearance of Plaintiff as Administratrix of Her Deceased Husband, Lee Vaughan, and Adoption of Proceedings in Her Behalf Herein." In this paper it was stated that on August 27, 1912, Daisy Vaughan, the plaintiff, was duly appointed administratrix of the estate of Lee Vaughan, deceased, by the probate court of Jackson county, Missouri, "where said Lee Vaughan with plaintiff herein had their residence;" that plaintiff, Daisy Vaughan, as such administratrix enters her voluntary appearance in said cause and adopts all the pleadings, steps, proceedings, verdict and judgment had therein as fully as if she had, as such administratrix, instituted said suit; that said plaintiff, Daisy Vaughan, who has hitherto prosecuted said suit as the widow and sole beneficiary thereof, now offers as such administratrix to conduct all further proceedings herein and to collect said judgment when the same shall be satisfied and account for the same to herself as such widow and next of kin and sole beneficiary; and now prays that the motions for new trial and in arrest be overruled.

On December 31, 1912, the plaintiff, Daisy Vaughan, appeared in court as administratrix and requested the court to allow her to enter her appearance as administratrix in accordance with her motion filed September 7th. She offered in evidence before the court the certified copy of the letters of administration granted her and attached to, and referred to in, said motion, and thereupon the court sustained said request and permitted said administratrix to become a party plaintiff. To all of which defendant objected and excepted.

Afterwards, on the same day, the court heard defendant's motion for new trial and sustained the same for the reason that "the cause of action herein is necessarily based upon the Federal Employers' Liability Act, and under the decisions of the Supreme Court of the United States in the 224th United States Report, page 547, plaintiff states no cause of action in herself as widow."

Thereafter, and on the same day, plaintiff filed a motion to set aside the order sustaining defendant's motion for a new trial, and the court, over defendant's objections and exceptions, sustained plaintiff's said motion and set aside the order sustaining defendant's motion for new trial. The court then overruled defendant's motion for a new trial, and defendant appealed.

As may be readily apprehended from the foregoing, one of defendant's contentions is that as deceased was in defendant's employ and engaged in interstate commerce when killed, the cause of action arises under, and is governed exclusively by, the Federal Employers' Liability Act which gives the right of action to the deceased's personal representative and not to his widow; that as the petition was in the name of the plaintiff as widow and stated that no administration was had, the court had no power, over defendant's objection, to render judgment in the case.

The language of the first section of the Federal Employers.' Liability Act makes it apply to "every common carrier by railroad while engaged in commerce between any of the several States." [35 U. S. Stats. at Large, 65, chap. 149.] Defendant undoubtedly came within those terms; and as the deceased at the time of his injury was a brakeman helping to move an interstate train, he was killed while employed by such carrier and engaged in such commerce. [Hunley v. Kansas City Southern Ry., 187 U. S. 617, l. c. 620 and 621.]

The subject of the liability of employers, engaged in interstate commerce, for injuries received by their employees while engaged in such commerce, fell within the police power of the States in the absence of action thereon by Congress. So that, prior to the passage of the above act, State laws governed. But Congress, in passing the above named statute, has acted upon that subject and consequently "the laws of the States, in so far as they cover the same field, are superseded, for necessarily that which is not supreme must yield to that which is." [Second Employers' Liability Cases, 223 U. S. 1, l. c. 55.] Defendant's liability in this case, therefore, and the cause of action, if any, accruing by virtue of the facts herein, are governed and must be determined by the Federal Act. "In respect of State legislation prescribing the liability of such carriers for injuries to their employees while engaged in interstate commerce, this act is paramount and exclusive." [Michigan Central Railroad v. Vreeland, 227 U. S. 59, l. c. 67.]

Under this act the right of action is given, in case of the death of the empolyee, to his personal representative, and the latter alone can sue. It might seem, since the personal representative sues, not for the benefit of the estate of deceased, but "for the benefit of the surviving widow or husband and children of such employee" that, in a case where only the widow sur-

vives and was therefore the only one who could inherit, the statute would not force the appointment of an administrator in order for suit to be maintained by her. And in the case of American R. Co. v. Birch, 224 U. S. l. c. 556, the trial court took that view. The case was one where only the widow and one son could inherit, and the suit was brought by that widow and son. It was, therefore, brought by the parties, and the only parties, to be benefited by the suit, just as in the case at bar. In answer to the view of the trial court in the above case, the Supreme Court of the United States, speaking through Mr. Justice McKenna, said: "But the words of the act will not yield to such a liberal construction. They are too clear to be other than strictly followed. They give an action for damages to the person injured, or, 'in case of his death, . . . to his or her personal representative.' It is true that the recovery of the damages is not for the benefit of the estate of the deceased but for the benefit 'of the surviving widow or husband and children.' But this distinction between the parties to sue and the parties to be benefited by the suit makes clear the purpose of Congress. To this purpose we must yield. Even if we could say, as we cannot, that it is not a better provision than to give the cause of action to those in relation to the deceased. In the present case it looks like a useless circumlocution to require an administration upon the deceased's estate, but in many cases it might be much the simpler plan and keep the controversy free from elements but those which relate to the cause of action. But we may presume that all contending considerations were taken into account and the purpose of Congress expressed in the language it used."

In St. Louis, etc., R. Co. v. Seale, 229 U. S. 156, l. c. 162, it was held that the surviving widow is not entitled to recover in her own name, but only through the deceased's personal representative. [To the same effect see Eastern Ry. Co. v. Ellis, 153 S. W. 701; Kan-

sas City, etc., Ry. Co. v. Pope, 152 S. W. 185; Gulf, etc., R. Co. v. Lester, 149 S. W. 841.]

In Rich v. Railroad, 166 Mo. App. 379, the St. Louis Court of Appeals held the same way and announced the well-known rule that the construction placed on a Federal statute by the United States Supreme Court is controlling over State courts.

Plaintiff does not controvert this statement of the law, but says that it does not follow therefrom that the judgment in this case must fail. Plaintiff's position involves and is founded upon the following considerations: 1. That the pleading and proof are sufficient, so far as the cause of action itself is concerned, to entitle plaintiff to recover. 2. That defendant's objection simply goes to plaintiff's *capacity to sue,* as widow, and that as the State courts have concurrent jurisdiction over cases arising under the Federal Act, and as said act does not attempt to regulate, control or affect the modes of procedure in State courts, and as section 1800 of our statutes (1909) gives the right to demur where plaintiff has no legal capacity to sue, and section 1804 provides that if no such objection is made the same shall be deemed to have been waived, consequently defendant waived the objection that the suit must be brought by the legal representative, because (so plaintiff says) defendant did not raise the point by demurrer, answer, nor at the time of the trial, nor in the motion for new trial. 3. The defendant, by its answer, set up contributory negligence and assumption of risk, which are defenses under the Kansas statutes, but which are not defenses (except partially so in certain instances) under the Federal Act, and hence plaintiff asserts defendant tried the case on the theory that it was a Kansas cause of action, and having submitted it upon that theory, cannot repudiate it afterward.

With reference to the first element of plaintiff's contention, namely, that the pleading and proof are sufficient to authorize a judgment so far as the cause

of action is concerned, it may be said that they are
sufficient if a judgment can be rendered under the Kan-
sas statute, but are they sufficient under the Federal
Act which supersedes the Kansas statute as applied
to employees engaged in interstate commerce? We
must not lose sight of the fact that the effect of the
Federal law is to displace and entirely set aside the
Kansas law in interstate commerce cases. This is not
a case where the Federal law leaves the Kansas stat-
ute in equal force over the subject-matter. It is not a
case of the plaintiff enforcing in one jurisdiction a
right given in another, in which other jurisdiction the
cause of action arose and in which the law is still in
force. Plaintiff cites the case of Stewart v. Railroad,
168 U. S. 445. But in that case the plaintiff was en-
forcing in the courts of the District of Columbia a
cause of action which arose in Maryland and which
was given by the laws of that State. In other words,
plaintiff in that case was still relying on the force and
efficacy of the cause of action given by the laws of
Maryland, and the laws of the District of Columbia did
not supersede, or set aside the Maryland laws. The
death for which suit was brought occurred in Mary-
land. If no cause of action had been given by Mary-
land, certainly judgment could not have been rendered
on a cause of action given only by the District of Colum-
bia. Now, in the case at bar, the Federal Act, as to
interstate commerce employees, is supreme and dis-
places the Kansas law, so that no right to a judgment
in favor of the widow exists under it. After the Fed-
eral enactment on the subject, the court was not au-
thorized to render a judgment in favor of the widow
because the Federal Act had taken out of the widow
the right to a judgment and had vested it in the per-
sonal representative. The right of the widow to have
judgment, in this character of cases, cannot exist by
virtue of the State statute because, as said in Gulf,
etc., R. Co. v. Lester, 149 S. W. 841, l. c. 843, it is "*just*

*as though the State statute was not in existence.*"
This is true so far as the widow's right to a judgment
is concerned. Consequently, the judgment can be ren-
dered only in favor of the one authorized to recover by
the strict terms of *the only law in force.* If this rea-
soning and the analysis hereinabove given of the Stew-
art case be incorrect, still the language of the Supreme
Court of the United States in the Second Employers'
Liability Case, 223 U. S. 1, above quoted, is too plain
and explicit to be disregarded, and must be followed.

From this also it would seem to follow that the
petition and the evidence did not authorize the court
to render judgment in favor of the widow. As said
by the Supreme Court of our own State, in Chandler
v. Railroad, 158 S. W. 35, l. c. 37: "A party suing
under the statute must bring himself in his pleading
and proof within the statutory requirements necessary
to confer the right. Otherwise his petition . . . and
his proof are insufficient to sustain his judgment. Only
such persons can recover as the letter of the law pre-
scribes. Only such persons may sue as the statute per-
mits, and they alone can sue." [See also on this point
Oates v. Railroad, 104 Mo. 514; McGinnis v. Mo. Car
and Foundry Co., 174 Mo. 225; Casey v. Hoover, 197
Mo. 62; Troxell v. Railroad, 227 U. S. 434.]

With reference to the *second* element of plaintiff's
contention, namely, that defendant has waived the ob-
jection that the plaintiff had no right to recover a
judgment as widow, there is this to be said. No waiver
was pleaded. Defendant demurred to the evidence and
thereby raised the point that plaintiff was not entitled
to judgment; the motion for new trial stated that the
court erred in overruling said demurrer; the motion
in arrest stated that "the petition did not state facts
sufficient to constitute a cause of action." And the
record shows that at first the trial court sustained
the motion for new trial because "plaintiff states no
cause of action," that is no cause of action in the plain-

tiff. When the defendant demurred to the evidence it raised the point that the plaintiff was not entitled to a judgment. The trial court was presumed to be cognizant of the enactment of the Employers' Liability Act, and to know that its effect was to supersede state laws on the subject, and that a judgment could be rendered only in favor of the personal representative and not in favor of the widow. [Second Employers' Liability Cases, 223 U. S. 1, l. c. 53; Missouri, etc., R. Co. v. Wulf, 226 U. S. 570, l. c. 576.] Indeed, the records show that the court was actually, as well as presumptively, cognizant of the Federal law and its applicability, at least before the motion for new trial was passed on. So that before the judgment was rendered defendant did raise the point that plaintiff was not entitled to take judgment, and as there was no right to a judgment existing in plaintiff, the court had no power or authority to render judgment in her favor.

But plaintiff says that the Federal Act does not attempt to control State procedure and that as defendant did not demur or raise its objection by answer, it has waived her lack of capacity. The trouble with this contention is that since the Federal Act *displaces* the Kansas statute it has taken out of the widow the right to recover and placed it in the personal representative, and when defendant by its demurrer to the evidence objected to any judgment, there was *no law in force* authorizing the court to render judgment in her favor. The court had no authority, *outside of the Federal law,* to render any judgment. Hence it had no authority to render the judgment it gave, and, as defendant objected thereto, by demurring to the evidence, the validity thereof was not waived. [See on this point Barker v. Railroad, 91 Mo. 86; Hegberg v. Railroad, 164 Mo. App. 565; Poor v. Watson, 92 Mo. App. 89.] Again, while the Federal Act does not attempt to control State procedure, yet it does not leave State procedure so free and untrammeled as to allow such pro-

cedure to *work a change in the terms of the statute.*
So that as defendant objected to the judgment before
it was rendered the provisions of the Federal law
were not waived.

The foregoing, partially at least, disposes of the
*third* element of plaintiff's contention, to-wit, that de-
fendant by its answer adopted the theory that the case
was governed solely by the Kansas statute. It may be
said, in passing, that pleading contributory negligence
and assumption of risk was not necessarily an admis-
sion that the cause of action arose wholly under the
Kansas law. Because, under the Federal Act, contrib-
utory negligence and assumption of risk are not taken
entirely out of the case except where the violation of
a statute enacted for the safety of employees caused
or contributed to the death, and there was a specifica-
tion of negligence in the petition not based on the vio-
lation of a statute.

But plaintiff urges that Mrs. Vaughan, a little over
seven months after the rendition of said judgment, was
appointed administratrix of her deceased husband's
estate, and nine months after said judgment entered
her voluntary appearance as such personal represen-
tative, and adopted all the pleadings, steps, proceed-
ings, verdict and judgment therein, and is therefore
entitled to hold said judgment as one in her favor as
administratrix. The trouble with this contention is
that said judgment was rendered *without authority of
law.* Defendant by its demurrer raised the point that
plaintiff, as the case then stood, was not entitled to
judgment. Under the law she was not. Consequently,
how can the administratrix claim that by entering her
appearance *after* judgment, she made that valid which
before was invalid? Plaintiff, with much earnestness,
cites the case of Missouri, etc., R. Co. v. Wulf, 226
U. S. 570, as an authority for that position. But in
that case the petition was amended and the adminis-
tratrix became a party to the suit *before* the judgment

was rendered. Consequently there was in the case at the time of that judgment a party entitled to recover and in whose favor the court had authority to render judgment. But such was not the case here. The judgment in the case at bar is in favor of a party not entitled to judgment under the terms of the Federal Act which is exclusive.

Again, the facts of the appointment of an administratrix and that the one claiming to be such was the one appointed, were as necessary to be proved as a part of the facts necessary to support a judgment, as any other facts. And the defendant was entitled to an opportunity to controvert them before the jury as well as any others. And in the Wulf case, supra, and also in the case of American R. Co. v. Didrickson, 227 U. S. 145, the defendants had such opportunity because the amendment was made before the trial. It is true the evidence of the appointment of the administratrix in the Didrickson case was not preserved in the record before the Supreme Court. But the court held at page 147 that, inasmuch as the case went to the jury with that appointment *as one of the issues in the case,* and no objection was made to the sufficiency of the evidence in support of that issue, and a general verdict was returned, the evidence is presumed to have been regular. In other words, defendant had the opportunity to controvert the evidence and as it made no objection it is presumed to have been regular. But in the case at bar the appointment was not one of the issues when it went to the jury. In fact, the evidence was that no appointment had been made. But, by the administratrix coming in *after* the judgment and attempting to make proof before the court of the appointment and her identity as such administratrix, defendant was precluded and foreclosed from controverting these matters.

It is thus seen that what the administratrix seeks to do here involves more than a mere "mode of pro-

cedure." It involves the right of defendant to contro-
vert every element of the facts necessary to the rendi-
tion of a judgment, and the power of the court to ren-
der *any judgment at all* as the case stood at the time
it was rendered. In this respect the case at bar differs
materially from the Wulf case, supra. At page 575 of
the Wulf case, the court say the objection there made
involved solely "the mode of procedure followed in the
circuit court." Something it could not have said had
the amendment in that case been made *after* judgment.
It is true on page 576 the court say, the amendment
did not modify or enlarge the facts on which the ac-
tion was based nor set up any different state of facts
as the ground of action. All of which is perfectly
true as applied to that case, since the judgment was
authorized by law, and rested upon all of the facts
stated in the petition as amended *prior to the trial of
the case.*

But even on the theory that the plaintiff's "adop-
tion" of the judgment may be considered purely a
"method of procedure," with which the Federal stat-
ute has nothing to do, still, it is a procedure not au-
thorized by our law. In the case of Chandler v. Chi-
cago, etc., Ry. Co., 158 S. W. 35, a widow brought
suit under our statute (Sec. 5425, R. S. Mo. 1909) for
the death of her husband. The statute required her to
sue within six months, but the petition showed on its
face that the suit was not begun until nine months after
the death. As the petition then stood she was not en-
titled to a judgment. There was, however, another
statute (Sec. 5429, R. S. Mo. 1909) which provided that
if she brought a suit within six months of her hus-
band's death and thereafter suffered a nonsuit, she
could bring another action within a year. As a mat-
ter of fact she had done this, but the petition nowhere
stated these facts showing the obviation of the six
months' bar. Defendant demurred to the evidence but
was overruled. In the Supreme Court plaintiff endeav-

ored to do as plaintiff has done in this case. She filed an amendment, *after* judgment, to the effect that she had appropriated the cause of action within six months and had suffered a nonsuit and had brought her suit within one year. She argued also that neither party was prejudiced and that the merits of the action had not been materially affected. But the court was unable to agree with that view and on page 37, in passing on the question, said: "If a material allegation is absent from the petition, as here, and the proof thereon is absent, as here, it would be a startling innovation for us to allow an amendment and to proceed to judgment, in the absence of proof sent here in the ancient way, to-wit, in an abstract of the record. I think no precedent can be found for that course and the absence of precedent is due, doubtless, to the lack of meritorious substance in such a dangerous novelty." It will be noticed too, in that case, that if the facts of plaintiff's attempted amendment were true, plaintiff *had a cause of action or a right to a judgment, on proper facts, at the time the judgment was rendered.* And yet the Supreme Court said the petition, as it stood, *did not state a cause of action.* In the case at bar, however, the widow had no right to a judgment upon *any* facts either inside or outside of the petition, since the Federal statute was exclusive and she was not appointed administratrix until seven months and five days after the judgment. So that, even as a matter purely of State *procedure,* we do not see how the administratrix in this case can be allowed to "adopt" the judgment after it has been rendered in favor of the widow who under the law was not entitled to it. [On this point see also Morton v. Supreme Council, 100 Mo. App. 76; Skinner v. Slater, 159 Mo. App. 589, l. c. 592.] In the case at bar the administratrix was not made a party to the case by an order of court until December 31, 1912, one, year, one month and nine days after the rendition of judgment. When it was made it did not amend the

petition nor did it change the judgment. It still stands as it read when rendered in favor of the widow.

But because the administratrix is not allowed to appropriate or "adopt" the judgment, it does not necessarily follow that the trial court could not have sustained defendant's motion for a new trial and have set aside the judgment and granted a new trial upon an amended petition having the facts stated therein that plaintiff had been appointed administratrix and was suing in that capacity. Mrs. Vaughan was appointed administratrix, and as such entered her voluntary appearance and asked to be made a party and adopted the pleadings, while the motion for new trial was pending. Could not the court have granted the administratrix's motion to be made a party and sustained defendant's motion for a new trial, thereby letting both sides try the case anew so that if a judgment should be rendered against defendant there would be a party in the case who would be entitled to recover it? This procedure seems to be authorized by the Supreme Court of the United States in the Wulf case supra. Nor does the fact that the administratrix was not appointed until after the expiration of the two-year limitation fixed by the Federal Act, seem to preclude such procedure. In that case (226 U. S. 570) the deceased died November 27, 1908. He was unmarried and his mother was the only beneficiary under either the Kansas statute or the Federal Act. On January 23, 1909, the mother individually brought suit on the Kansas statute and alleged in her petition that no administration was had anywhere. On January 4, 1911, *more than two years after the son's death,* the mother was appointed administratrix of his estate and two days later *filed an amended petition* setting up that fact and stating that she also sued as administratrix. This amendment was objected to by defendant and its exceptions were saved. The Supreme Court of the United States held that the amendment was proper and that

.the administratrix's cause of action was not "barred by the limitation of two years before she undertook to sue as administratrix."

There seems to be a distinction between "a cause of action" and a plaintiff's "right to a judgment." Sometimes the phrase "no cause of action" is used in the sense that plaintiff has "no right to a judgment." In such case it is not meant that the petition states no cause of action at all, but only that on the facts stated plaintiff cannot recover. Such evidently is the meaning in the Chandler case, supra, for while it is held that a petition that states no cause of action *at all* is no petition and is not amenable, yet the Supreme Court in that case remanded the cause so that the petition *could* be amended to state a cause of action in plaintiff. In other words, the court in effect held that the plaintiff's petition did state a cause of action but stated it so defectively as not to authorize the rendition of the judgment in her favor. And that is the situation in the case at bar.

The Supreme Court of the United States in the Wulf case in effect recognizes the same distinction. The "cause of action" in the mother's original petition grew out of the facts and circumstances of the son's being killed while in the employ of a common carrier engaged in interstate commerce. The only thing lacking to make a perfect statement of that cause of action was a party having the capacity to receive a judgment thereon. And so the court held that the amendment, made *before* the trial, was not the alleging of "an entirely new and distinct cause of action," and that such an amendment could lawfully be allowed so as to relate back to the commencement of the action, even if the plaintiff's cause of action was barred by the limitation of two years before she undertook to sue as administratrix. This, however, was not saying that an administratrix appointed *after* the judgment could come in and "adopt" a judgment rendered in

favor of one not entitled to receive it. On the point that the petition filed by Mrs. Vaughan, as widow, did not so wholly fail to state a cause of action as to be incapable of amendment, but was merely the defective statement of a good cause of action, see the ''Modification of Opinion on Rehearing'' in the case of Eastern Ry. Co. v. Ellis, 153 S. W. 701, l. c. 710.

We, therefore, held that the administratrix in this case, having come in before the motion for new trial was disposed of, could, after the sustaining of said motion, have proceeded to trial anew on an amended petition, which she would have had a right to file as a party to the suit. In that event, a judgment, when rendered, will be authorized by law since it will be in favor of some one entitled to it. And such is the course to be pursued now, under the authority of the Wulf case.

The result of the foregoing view is that the case must be reversed and remanded for a new trial unless, on the facts shown, there can be no recovery. This makes it necessary to consider some of the other objections made by defendant.

The main theory of negligence presented by the petition is that the accident occurred at a stopping post on the railroad just before reaching the crossing or intersection of another railroad; that it was the duty of the engineer to stop at said post and whistle for the crossing and it was the custom always to do this at said point, and that the deceased knew this; that it was down grade and when the engine slowed up the cars would be crowded together with much slack in them; that the deceased expecting and having a right to expect that after the engine began to slow up it would continue to slow up until it came to a stop and would not start up until after a stop was made, attempted to pass from one of the cars to his place on the engine while said engine was slowing up and the cars were close together, but that the engineer, instead of stopping as he was required and expected to do, suddenly

started up and went on without stopping, and that the sudden and *unexpected* starting up or jerk of the engine, made in violation of the duty to stop, suddenly took the slack out of the connection between the cars from and to which deceased was passing and threw him to the track where he was run over and killed. There was evidence tending to show all of these facts from other sources than the declarations of the deceased, except as to the *jerk having caused him to fall.* This was the *missing link,* so to speak, in plaintiff's testimony. The only way in which it could be supplied, of course, was by the statement of deceased himself, since no one else saw or knew of the accident at the instant it happened.

Defendant's objection is that this statement was not a part of the *res gestae* and was, therefore, not admissible. The situation usually presents a close question, and many cases can be cited in favor of either side of the proposition. Each case must be decided in the light of its own facts to some extent, giving, however, heed to certain general principles applicable to the question in all such cases. These principles are, that to make the declaration admissible, it must be made under such circumstances as to show that it was not a mere narration of a past event but was so connected with the cause of the accident as to form a part of the entire transaction and to grow out of it spontaneously, precluding the idea that it was the result of a design. While it must be contemporaneous with the main fact, it does not have to be precisely concurrent in time. [State v. Lockett, 168 Mo. 480, l. c. 487; Stoeckman v. Railroad, 15 Mo. App. 515; Leahey v. Railroad, 97 Mo. 165, l. c. 172.] It is sufficient if the declaration is so clearly connected with the main fact to be proved that the former can be said to be the unpremeditated, spontaneous explanation of the cause. [See, also, Brownell v. Railroad, 47 Mo. 239, l. c. 244; Harriman v. Stowe, 57 Mo. 93, l. c. 96; Giles v. Railroad,

169 Mo. App. 24, 1. c. 35; Jewell v. Powder Mfg. Co., 166 Mo. App. 555.]

The declaration made by the deceased was made while lying where he fell with both legs cut off, one so close up to his body that a hole was made in the pelvic cavity, and was made to men who came running to where he was, attracted by his agonized cries. The declaration was to the effect that as he was stepping from the car to the tender the engine suddenly started up, causing him to fall. Several witnesses testify to his making this statement. Some of them say they reached him and heard him make the statement in three to five minutes after the train passed. Others say it was twenty minutes after. The record does not show very clearly whether the statement to which the different witnesses testify was one and the same statement, of which each was giving his version, or whether there were different and successive statements made by deceased though all to the same effect. It would seem that if there were different and successive statements made, then those statements which were mere repetitions of the statement made first when the men first reached him within three to five minutes after his injury occurred, might not be admissible, while the first statement would be. In such case a statement made within a few minutes, or even longer than that, after the accident and to the first who came to his aid when the natural and spontaneous impulse would be to tell the cause of the accident without thought of its effect or time in which to form a design in regard thereto, would be a part of the *res gestae,* while another and a second statement made twenty minutes later would be a mere narration of what had happened and would be hearsay. Whether the declaration of deceased was one statement or several, there is evidence that one was made to one who reached him very shortly after the accident happened and that the declaration was made immediately and arose spontaneously and naturally out

of the situation. But because it is not clear whether there were many statements or but one, is no grounds for saying that recovery must be denied outright. If one of such statements is admissible, plaintiff has a right upon a new trial to show that one, and the error of admitting still later and unconnected statements can be avoided. In such case we cannot say there was no admissible evidence whatever upon the point.

Neither can we agree with defendant in its contention that even if the facts are as plaintiff claims them to be, there was no negligence shown. We think there was.

It was the engineer's duty and custom to slow down and come to a stop before starting up. The deceased knew this and had a right to expect after the engine began to slow down that it would not start up again until it had stopped. The engineer's sudden and unexpected starting up instead of continuing to slow up until he stopped, all in clear violation of his duty, caught deceased unawares and threw him from his train. And while the engineer may not have known that deceased was in the act of stepping from one car to another, yet the engineer did know that he was back on the train somewhere and not in his accustomed place on the engine, and that all the members of the train crew would have a right to expect that as the engine was slowing up it would continue to do so until after the stop was made, and that if he did suddenly start up *under those circumstances* he would catch them unawares, and possibly cause them to fall. In such circumstances we cannot say that because freight trains jerk more or less in their ordinary operation and the brakemen must look out for jerks, that therefore he must look out for a jerk when the engineer's action in commencing to slow up and his well-known duty to slow up and to continue so doing, is, in effect, a statement to the brakeman that *at this point* the train will *not* start up or jerk until after a stop has been made.

By failing to stop and by starting up thus unexpectedly at a time when it was a violation of duty to start up, he took the brakeman off his guard. It cannot be said that there was no negligence.

There are other objections made but as the errors, if any, do not go to the right to recover they need not be noticed now, since they can be obviated at the next trial.

For the reasons given the cause is reversed and remanded for a new trial. All concur.