[No. 8336.]

DENVER & RIO GRANDE RAILWAY CO. v. WILSON.

1. CONSTITUTIONAL LAW—*Federal Statute—Supremacy of.* The Federal Statute regulating the liability of interstate carriers to their employees supersedes and displaces the provisions of the State Statute within its purview. The Federal Statute conferring upon the personal representative of the servant of a common carrier engaged in interstate commerce a right of action for the death of such servant, attributable to the negligence of the master (35 Stat. 65, c. 149; 36 Stat. 291, c. 143) the widow is not permitted to maintain an action under the statute of the State. Defendant was a common carrier, engaged in both interstate and intrastate commerce. A train carrying such commerce had been derailed, obstructing the track. Deceased and other employes were sent to remove the obstruction. To effect this, a temporary track had been constructed around the derailed train, in order to give passage to trains carrying interstate commerce. Deceased had been sent for oil, with which to oil the connection of the temporary track with the main track, and while going or returning upon this errand, was killed by an explosion, attributed to the negligence of defendant. *Held,* deceased was engaged in interstate commerce at the time of his death.

2. ——*Pleading.* That the facts which bring the case within the Federal Statute appear only in the testimony is sufficient to give that statute sway. It is not required that the facts should appear by the pleadings.

*Error to Chaffee District Court.* Hon. CHARLES A. WILKIN, Judge.

Mr. E. N. CLARK, Mr. J. A. MARSH, Mr. A. G. LUCAS, for plaintiff in error.

Mr. G. K. HARTENSTEIN, for defendant in error.

CHIEF JUSTICE WHITE delivered the opinion of the court.

Defendant in error, hereinafter referred to as plaintiff, recovered a judgment in damages against plaintiff in error on account of the death of her husband, George D. Wilson. The complaint alleged that defendant was a Colorado corporation and owned and operated a railroad, "in and through the State of Colorado"; that on the 6th day of October, 1912, it was engaged in building a temporary or "shoofly" track around a freight wreck on its road, near a designated station in this state, and, in the construction thereof, placed a quantity of giant powder upon the surface of two large rocks, approximately one hundred and forty-eight feet apart, on the line of the temporary track, and carelessly, recklessly and negligently, without giving proper notice of its intention so to do, exploded the same; that plaintiff's husband was at the time an employee of the defendant, and engaged in the performance and discharge of his duties as such employee, and was then and there, by one of such explosions, killed, without fault on his part; that plaintiff was dependent upon her husband for support, and by reason of his death was damaged in the sum of $5,000, for which she asked judgment with interest from the date of filing the complaint. The answer admitted the corporate existence of the defendant, the nature and character of its business, the relationship of plaintiff to deceased, and his employment by defendant as alleged in the com-

plaint; denied that the death of plaintiff's husband was caused by defendant's negligence, and alleged that it was due to his own negligence.

At the close of the evidence defendant questioned the right of plaintiff to maintain the action and asked that the jury be instructed to the effect that if a cause of action existed under the facts and circumstances disclosed, it could be prosecuted only by the personal representative of deceased, and not by plaintiff in her individual capacity. The requested instruction was refused and, over the objection of the defendant, the cause submitted to the jury upon the theory that the state law controlled.

As no right of action existed at common law, in anyone, to recover damages for the death of a person resulting through the negligence of another—*Michigan Central R. R. Co. v. Vreeland,* 227 U. S. 59, 57 L. Ed. 417, Ann. Cas. 1914C, 176—it is essential that the cause of action be based on some applicable statute. The complaint stated a cause of action under the state law, but there was a Federal statute—35 Stat. 65 c. 149; 36 Stat. 291 c. 143—relating to the liability of railroads when engaged in interstate commerce, for the death, through their negligence, of any of their employees, while engaged in such commerce, and it becomes necessary to determine which of these statutes is applicable to this case. The two statutes cover the same subject, are unlike in substantial respects, and cannot occupy the same field. This has been settled by the Supreme Court of the United States in numerous decisions. Second Employers' Liability Cases (*Mondou v. N. Y., N. H. & H. R. Co.,* 223 U. S. 1, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. [N. S.] 44); *Taylor v. Taylor,* 232 U. S. 363, 34 Sup. Ct. 350, 58 L. Ed. 638; *St. Louis, S. F. & T. Ry. Co. v. Seale,* 229 U. S. 156, 33 Sup. Ct. 651, 57 L. Ed. 1129,

Ann. Cas. 1914C, 156; *Michigan Central R. R. Co. v. Vreeland, supra.* In *Mondou v. N. Y., N. H. & H. R. Co., supra,* after sustaining the constitutionality of the statute, its effect upon state laws covering the same subject, is considered and determined in the following language on pages 53, 54, and 55 [56 L. Ed. 327, 38 L. R. A. (N. S.) 44]:

"The third question, whether those regulations supersede the laws of the States in so far as the latter cover the same field, finds its answer in the following extracts from the opinion of Chief Justice Marshall in *McCulloch v. Maryland,* 4 Wheat. 316, [4 L. Ed. 579] (p. 405): 'If any one proposition could command the universal assent of mankind, we might expect it would be this:—that the government of the Union, though limited in its powers, is supreme within its sphere of action. This would seem to result necessarily from its nature. It is the government of all; its powers are delegated by all; it represents all, and acts for all. Though any one State may be willing to control its operations, no State is willing to allow others to control them. The nation, on those subjects on which it can act, must necessarily bind its component parts. But this question is not left to mere reason: the people have, in express terms, decided it, by saying, 'this constitution, and the laws of the United States, which shall be made in pursuance thereof, * * * shall be the supreme law of the land,' and by requiring that the members of the state legislatures, and the officers of the executive and judicial departments of the States, shall take the oath of fidelity to it. The government of the United States, then, though limited in its powers, is supreme; and its laws, when made in pursuance of the constitution, form the supreme law of the land,' anything in the constitution or laws of any State, to the contrary notwithstanding.'

(p. 426) 'This great principle is, that the constitution and the laws made in pursuance thereof are supreme; that they control the constitution and laws of the respective States, and cannot be controlled by them.'

And particularly apposite is the repetition of that principle in *Smith v. Alabama,* 124 U. S. 465, 473:

'The grant of power to Congress in the Constitution to regulate commerce with foreign nations and among the several States, it is conceded, is paramount over all legislative powers which, in consequence of not having been granted to Congress, are reserved to the States. It follows that any legislation of a State, although in pursuance of an acknowledged power reserved to it, which conflicts with the actual exercise of the power of Congress over the subject of commerce, must give way before the supremacy of the national authority.'

True, prior to the present act the laws of the several States were regarded as determinative of the liability of employers engaged in interstate commerce for injuries received by their employees while engaged in such commerce. But that was because Congress, although empowered to regulate that subject, had not acted thereon, and because the subject is one which falls within the police power of the States in the absence of action by Congress. *Sherlock v. Alling,* 93 U. S. 99 [23 L. Ed. 819]; *Smith v. Alabama,* 124 U. S. 465, 473, 480, 482 [8 Sup. Ct. 564, 31 L. Ed. 508]; *Nashville, etc., Railway v. Alabama,* 128 U. S. 96, 99 [9 Sup. Ct. 28, 32 L. Ed. 352]; *Reid v. Colorado,* 187 U. S. 137, 146 [23 Sup. Ct. 92, 47 L. Ed. 108]. The inaction of Congress, however, in no wise affected its power over the subject. *The Lottawanna,* 21 Wall. 558, 581 [22 L. Ed. 654]; *Gloucester Ferry Co. v. Pennsylvania,* 114 U. S. 196, 215 [5 Sup. Ct. 826, 29 L. Ed. 158]. And now that Congress has acted, the laws of the States, in so far as they cover the

same field, are superseded, for necessarily that which is not supreme must yield to that which is. *Gulf, Colorado & Santa Fe Railway Co. v. Hefley*, 158 U. S. 98, 104 [15 Sup. Ct. 802, 39 L. Ed. 910]; *Southern Railway Co. v. Reid*, 222 U. S. 424 [32 Sup. Ct. 140, 56 L. Ed. 257]; *Northern Pacific Railway Co. v. Washington*, 222 U. S. 370 [32 Sup. Ct. 160, 56 L. Ed. 237]."

Within the sphere it operates, the Federal statute covers every actionable case of wrongful death of an employee; and within the sphere of its operation is necessarily paramount and exclusive. Therefore any regulation by the state, that in any material way conflicts with the paramount Federal law, is non-effective. The state statute gives a right of action for the death of the deceased to his "wife," in the first instance, or, if he left none, or she failed to sue within one year after his death, then to certain designated relatives, and in the event of no such designated persons, then to the next of kin of the deceased as may be dependent upon him for support; and further provides that every such action may be maintained by any such person entitled to sue, for the use and benefit of the other or others entitled to sue, as well as for the plaintiff so suing, etc. §§ 2181, 2182, 2183, Chapter 40 M. A. S., 1912. The Federal statute, however, covers, *inter alia,* the subject of the liability of common carriers by railroad, engaged in interstate commerce for the death of any of their employees while so engaged in such commerce by reason of "the negligence of any officers, agents or employes of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment of such railroad"; and gives a right of action to recover damages therefor solely to the personal representative of such deceased employee. Therefore, if the facts of a

case bring it within the Federal statute, the state statute is necessarily excluded by reason of the supremacy of the former under article VI of the Federal Constitution. Second Employers' Liability Cases, *supra; Michigan C. R. Co. v. Vreeland, supra; St. Louis, etc., R. Co. v. Seale, supra.*

Under the Federal law the administrator or executor alone may maintain the action. This was directly ruled in *St. Louis, etc., R. Co. v. Seale, supra,* in the following language, page 158 [33 Sup. Ct. 652, 57 L. Ed. 1129; Ann. Cas. 1914C, 156]: "And if the Federal statute was applicable, the right of recovery, if any, was in the personal representative of the deceased, and no one else could maintain the action." We must, therefore, ascertain whether the Federal statute was applicable under the facts of this case, and this depends upon whether the injuries which caused the death of the deceased were sustained while the company was engaged, and while he was employed by it, in interstate commerce. The pleadings in no wise affirmatively disclose that deceased was employed in interstate commerce, or that defendant was engaged in such commerce, nor are any facts alleged from which such employment or engagement can be inferred. The evidence, however, disclosed that the defendant was engaged in the business of interstate commerce, that the decedent was employed by it, and at the time of receiving the injuries resulting in his death, was discharging a duty devolving upon him as such employee by participating in the carrying on of that business. It was to the effect that defendant was a common carrier operating a main line of railroad from Salt Lake City, Utah, to Denver, Colorado; that deceased had been employed by defendant for fifteen or sixteen years, and during three or four years immediately preceding his death was employed by it as a wrecker, or car repairer;

that the defendant at the time was a common carrier engaged in both *intra* and interstate commerce, and that the train that was wrecked, around which the temporary or "shoofly" track was being constructed, was on its main line aforesaid, and was carrying freight, much of which was destined to points in different states; that the wreck derailed some of the cars, demolished others, and obstructed all traffic on the interstate line; that the defendant sent its wrecking crew, of which deceased was a member, together with available section men in the locality, to the scene of the wreck, to clear the track, open up the line and permit both local and interstate traffic to pass that point; that in the course of the work it was deemed necessary, in order to facilitate the operation of trains thereover, to oil the rails at the connection of the main line with the "shoofly" track and that deceased, in going to the work car for, or returning therefrom with, oil for that purpose, received the injuries resulting in his death. Clearly the work which the deceased was doing constituted a part of the interstate commerce in which the carrier defendant was engaged, and this is the true test as to the applicability of the Federal statute. *Pedersen v. Delaware, L. & W. R. R. Co.,* 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153; *Illinois Cent. R. Co. v. Behrens,* 233 U. S. 473, 478, 34 Sup. Ct. 646, 58 L. Ed. 1051, Ann. Cas. 1914C, 163.

In the Pedersen case the party seeking to recover was carrying, from a work car to a bridge, some bolts or rivets which were to be used by him and others in repairing the bridge, the repair to consist in taking out an existing girder and inserting another. To reach the bridge it was necessary to pass over an intervening temporary bridge. These bridges were being regularly used both in intrastate and interstate commerce. While crossing the temporary bridge on his way to the other bridge,

the employee suing was injured by an intrastate passenger train. In holding that the employee was injured while engaged in interstate commerce the court said: "* * * we are only concerned with the nature of the work in which the plaintiff was employed at the time of his injury. Among the questions which naturally arise in this connection are these: Was that work being done independently of the interstate commerce in which the defendant was engaged, or was it so closely connected therewith as to be a part of it? Was its performance a matter of indifference so far as that commerce was concerned, or was it in the nature of a duty resting upon the carrier? The answers are obvious. Tracks and bridges are as indispensable to interstate commerce by railroad as are engines and cars; and sound economic reasons unite with settled rules of law in demanding that all of these instrumentalities be kept in repair. The security, expedition and efficiency of the commerce depends in large measure upon this being done. Indeed, the statute now before us proceeds upon the theory that the carrier is charged with the duty of exercising appropriate care to prevent or correct 'any defect or insufficiency * * * in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment' used in interstate commerce." This necessarily settles the proposition that deceased was engaged in interstate commerce when he received the fatal injuries, as he was removing a wreck of interstate freight from, and opening up, the track used by defendant to carry both *intra* and interstate commerce. A further quotation from the Pedersen case, *supra,* is applicable: "The point is made that the plaintiff was not at the time of his injury engaged in removing the old girder and inserting the new one, but was merely carrying to the place where that work was to be done some of the materials to

be used therein. We think there is no merit in this. It was necessary to the repair of the bridge that the materials be at hand, and the act of taking them there was a part of that work. In other words, it was a minor task which was essentially a part of the larger one, as in the case when an engineer takes his engine from the roundhouse to the track on which are the cars he is to haul in interstate commerce." Analagous in principle and determinative of the point under consideration are the following: *St. Louis, S. F. & T. Co. v. Seale, supra; Norfolk & West. Ry. Co. v. Earnest,* 229 U. S. 114, 33 Sup. Ct. 654, 57 L. Ed. 1096, Ann. Cas. 1914C, 172; *Northern Pac. Ry. Co. v. Maerkl,* 198 Fed. 1, 117 C. C. A. 237; *Columbia & P. S. R. Co. v. Sauter,* 223 Fed. 604, 139 C. C. A. 150; *Lombardo v. Boston & M. R. R. Co.,* (D. C.), 223 Fed. 427; *Central R. of N. J. v. Colasurdo,* 192 Fed. 901, 113 C. C. A. 379.

That deceased was engaged in interstate commerce is not controverted by plaintiff, but the contention is that, as neither party in their pleadings set forth any facts to bring the case under the Federal statute, the defendant waived the objection that the plaintiff had no right to maintain the action. The contention is untenable. When the facts of a case, whether disclosed by the pleadings or the evidence, bring the Federal law into operation, such law is paramount, and when those facts developed in this case it disclosed a total absence of right on the part of the plaintiff to maintain the action. In this respect the case is much like *St. Louis, etc., Ry. Co. v. Seale, supra,* where the suit was brought under a state statute, but the testimony disclosed that the plaintiff was injured while engaged in interstate commerce. The court said: "When the evidence was adduced it developed that the real case was not controlled by the state statute but by the Federal statute. In short, the case

pleaded was not proved and the case proved was not pleaded. In that situation the defendant interposed the objection, grounded on the Federal statute, that the plaintiffs were not entitled to recover on the case proved. We think the objection was interposed in due time, and that the state courts erred in overruling it." As said in *Flanders v. G. S. & F. Ry. Co.,* 68 Fla. 479, 67 So. 68, 70: "Such legislation (Federal statute) therefore cannot be regarded as a mere regulation of judicial procedure; and its essential requirements cannot be affected by mere possible waivers resulting from the order of presenting pleadings, or of procedure that might operate in a local forum to affect a right given by the local law and in controversy. This being so, if the facts on which the cause of action must rest, bring the case within the operation of the paramount federal statute, it is quite immaterial how or when the real facts developed in the progress of the cause." If the evidence, tending to prove facts sufficient to bring the case under the Federal statute, was inadmissible under the pleadings, and might have been excluded upon objection, (which we do not determine), it was, nevertheless, admitted without objection, and so long as it remained in the record either side had the right to claim the benefit of the Federal statute, even without amendment of the complaint or answer. This question was determined in *Toledo, St. Louis & Western R. R. Co. v. Slavin,* 236 U. S. 454, 457, 59 L. Ed. 671, 35 Sup. Ct. 306, 307, in the following language: "* * * a controlling Federal question was necessarily involved. For, when the plaintiff brought suit on the state statute the defendant was entitled to disprove liability under the Ohio Act, by showing that the injury had been inflicted while Slavin was employed in interstate business. And, if without amendment, the case proceeded with the proof showing that the right of

the plaintiff and the liability of the defendant had to be measured by the Federal statute, it was error not to apply and enforce the provisions of that law.'' And in *Missouri, Kansas & Texas Ry. Co. v. Wulf*, 226 U. S. 570, 575, 576, 57 L. Ed. 355, 33 Sup. Co. 135, Ann. Cas. 1914B, 134, it is said: ''It is true the original petition asserted a right of action under the laws of Kansas, without making reference to the act of Congress. But the court was presumed to be cognizant of the enactment of the Employers' Liability Act, and to know that with respect to the responsibility of interstate carriers by railroad to their employes injured in such commerce after its enactment it had the effect of superseding state laws upon the subject.  *  *  *   Therefore the pleader was not required to refer to the Federal act, and the inference actually made to the Kansas statute no more vitiated the pleading than a reference to any other repealed statute would have done.'' The following cases are to the same effect: *St. Louis, etc., Ry. Co. v. Seale, supra; Seaboard Air-Line Ry. v. Horton*, 233 U. S. 492, 34 Sup. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475; *Koennecke v. Seaboard Ry.*, 101 S. C. 86, 85 S. E. 374, 375; *La Casse v. New Orleans, T. & M. R. Co.*, 135 La. 129, 64 South. 1012, 1013; *Vaughan v. St. Louis & S. F. R. Co.*, 177 Mo. App. 155, 166, 164 S. W. 144.

Under the facts of this case a suit brought by the personal representative of deceased would necessarily inure solely to the benefit of the widow and none other. Why then is she not the real party in interest, and under our code entitled to maintain the cause of action? The answer is obvious. The cause of action arises under, and is governed exclusively by the Federal Act which gives the right of action to the deceased's personal representative, and not to his widow. While the act does not attempt to control state procedure, it, nevertheless, does

not leave such procedure so free and untrammeled as to allow it to work a change in the terms of the statute. The only law applicable to the facts, as developed, was the Federal law, and any judgment in the cause may be entered only in favor of those authorized to recover by the terms of the only law applicable. In answer to the contention that a suit is properly brought in the name of the only persons for whose benefit any recovery can be had under the Federal Act, the Supreme Court in *American R. R. Co. v. Birch*, 224 U. S. 547, 557, 56 L. Ed. 879, 32 Sup. Ct. 603, 606, said:

"But the words of the act will not yield to such a liberal construction. They are too clear to be other than strictly followed. They give an action for damages to the person injured, or, 'in case of his death, * * * to his or her personal representative.' It is true that the recovery of the damages is not for the benefit of the estate of the deceased but for the benefit 'of the surviving widow or husband and children.'

But this distinction between the parties to sue and the parties to be benefited by the suit makes clear the purpose of Congress. To this purpose we must yield. Even if we could say, as we cannot, that it is not a better provision than to give the cause of action to those in relation to the deceased. In the present case it looks like a useless circumlocution to require an administration upon the deceased's estate, but in many cases it might be much the simpler plan, and keep the controversy free from elements but those which relate to the cause of action. But we may presume that all contending considerations were taken into account and the purpose of Congress expressed in the language it used."

The death of plaintiff's husband, through the negligence of defendant, its officers, agents or servants, constitutes the cause of action, if any. If the facts estab-

lish a case the defendant would be liable in damages therefor either to the plaintiff in her individual capacity or to the personal representative of deceased, depending in that regard upon whether the employee was at the time engaged in *intra* or interstate commerce. It has been held that a plaintiff suing in her individual capacity under the state law, may amend her complaint by making herself a party plaintiff as the personal representative of deceased and alleging the cause of action under both the state and Federal statutes. *Missouri, etc., R. Co. v. Wulf, supra; Koennecke v. Seaboard Ry., supra; Vaughan v. St. Louis & S. F. R. Co., supra.*

In the instant case, however, there was no attempt to amend the complaint and the question, therefore, is not before us for determination. If the plaintiff has rights in that regard she is not to be foreclosed by that which is said herein. The judgment is, therefore, reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed and Remanded.*

Decision *en banc.*