## LEAHEY v. CASS AVENUE & FAIR GROUNDS RAILWAY COMPANY, *Appellant.*

1. **Evidence** : RES GESTAE. The declaration of an injured person, in order to be admissible as a part of the *res gestae*, need not be coincident, in point of time, with the main fact to be proved. It is enough that the two are so clearly connected that the declaration can, in the ordinary course of affairs, be said to be the spontaneous exclamation of the real cause. If the subsequent declaration and the main fact at issue, taken together, form a continuous transaction, the declaration is admissible. A mere subsequent declaration will not, of itself, furnish a sufficient connecting circumstance.

2. —— : —— : CASE ADJUDGED. In an action against a street railroad for death of a minor child, declarations of the child as to the manner in which he was hurt, made at the scene of the accident, and while surrounded by persons who witnessed the calamity, are admissible as a part of the *res gestae*. But what the child said after being carried fifty or seventy-five feet, and laid on a cot, and from five to twenty minutes after the accident, was not admissible.

3. —— In such an action, evidence of witnesses that they heard a woman shout "murder" after the accident was inadmissible.

4. —— : IMPEACHMENT OF WITNESS. In order to impeach a witness, it is competent to show that he has made statements out of court inconsistent with those made in court, the proper foundation having been laid therefor.

*Appeal from St. Louis City Circuit Court.*—Hon. G. W. Lubke, Judge.

Reversed and remanded.

*Leonard  Wilcox* for appellant.

(1) It was error to permit Dr. Miller, James Keating, Maggie Keating, and each of them, to testify to statements and declarations made by James O'Neil after he had been carried into Keating's house. *State v. Rider*, 90 Mo. 62 ; *Waldele v. Railroad*, 95 N. Y. 278 ; *Martin v. Railroad*, 103 N. Y. 629 ; *Railroad v. O'Brien*, 119 U. S. 106 ; *Merkel v. Bennington*, 58 Mich. 162 ; *Railroad v. Mara*, 26 Ohio St. 185, 190 ; *Armil v. Railroad*, 70 Iowa, 130 ; *Rogers v. McCune*, 19 Mo. 558 ; *Kelly v. Railroad*, 88 Mo. 534 ; *Adams v. Railroad*, 74 Mo. 556 ; 1 Wharton on Ev. (3 Ed.) secs. 259, 265 ; *Williamson v. Railroad*, 144 Mass. 148.   (2) It was error to permit Callahan and Dyas to testify what deceased said after the accident was over and a  crowd had gathered and as he was being carried away from the place of the accident, and in overruling defendant's motion to strike out one of Callahan's answers on this point. *State v. Rider*, 90 Mo. 62 ; *Martin v. Railroad*, 103 N. Y. 629 ; *Railroad v. Mara*, 26 Ohio St. 185, 190 ; *Kelly v. Railroad*, 88 Mo. 534.   (3) It was error to overrule defendant's motion to strike out Callahan's statement that he heard a woman shout "murder," and defendant's objection to the question asked same witness "whether he heard anything else said or any cry made  besides the declaration of the boy that he had been kicked off the car," his answer to which was a repetition of the statement. *State v. Sneed*, 88 Mo. 138, 142 ; *Railroad v. O'Brien*, 119 U. S. 105.   (4) It was error to permit officer Morgan to testify what the driver of the  car said  to  him three days after the accident, and to permit the driver to

be asked if he made said statements. *Sherman v. Railroad*, 106 N. Y. 542 ; *Leavy v. Dearborn*, 19 N. H. 355, 356 ; *People v. Buddensieck*, 4 N. Y. 230, 264 ; *Kelly v. Railroad*, 88 Mo. 537, 540, 548 ; *McDermott v. Railroad*, 87 Mo. 299.

*J. F. Merryman* for respondent.

(1) The testimony of officer Callihan and conductor Dyas as to the statement of deceased made within a minute or a minute and a half after the accident; of James Keating and Maggie Keating of declarations made within five minutes after the accident; of Dr. Miller of statements and declarations made within fifteen minutes—all to the effect that the driver kicked deceased off the car, are admissible as part of the *res gestae*. *Brownell v. Railroad*, 47 Mo. 239 ; *State v. Sloan*, 47 Mo. 611 ; *Harriman v. Stowe*, 57 Mo. 96 ; *Entwhistle v. Feighner*, 60 Mo. 215 ; *Stockman v. Railroad*, 15 Mo. App. 515 ; *State v. Banks*, 10 Mo. App. 115 ; 1 Greenl. on Ev. sec. 108 ; *Ins. Co. v. Mosley*, 8 Wall. 397 ; *Com. v. McPike*, 3 Cush. 181 ; *Newton v. Ins. Co.*, 2 Dillon, 154; *Mitchum v. State*, 11 Ga. 627; Starkie on Ev. 88-89 ; 1 Taylor on Ev. secs. 521-525. (2) The statement of officer Callihan that he heard a woman shout "murder" at the time the accident occurred was admissible. (3) The testimony of officer Morgan that Jessop, the driver, stated to him three days after the accident, when they were in the hoodlum wagon on their road to the Four Courts, that he did not kick the deceased off the car, but " closed the gate on him," was competent and relevant, not as part of the *res gestae*, but by way of impeachment.

BLACK, J.—This is an action to recover statutory damages for the death of James O'Neil, a boy eleven years of age, and the son of the plaintiff. The defendant corporation owns, and with horse-power operates, a street railroad in the city of St. Louis. That the boy

was run over by one of defendant's cars and received wounds and bruises from which he died on the next day, is an undisputed fact. At the time of the accident the car was a few yards east of the Twenty-fourth street crossing going east on Cass avenue.

Plaintiff produced evidence tending to show that the boy was standing on the front platform of the car with the driver just before and while crossing Twenty-fourth street; that they appeared to be talking together and the driver appeared to be angry; that the boy opened the gate and stepped out backwards on the step, facing and looking at the driver, and appeared to be frightened; and that he stepped and fell off and under the car. One witness says the driver made a pass at the boy with his hand.

The defendant's evidence tends to show that this and another boy by the name of Brown were together on the street; that Brown jumped on the step to the front platform, and, in answer to a question of the driver, said he was going down town, whereupon the driver told him to get in the car; that Brown opened the gate, stepped in on the platform, and then out and off; that at this moment O'Neil got on the step and immediately slipped and fell under the car; that the driver did not speak to him, and only observed his presence when he fell.

Two policemen arrested the driver and conductor and took them to the station. Persons present then carried the boy to the house of Mr. Keating, a distance of fifty or seventy-five feet, where a cot was provided for him. After he had been placed upon it, he stated to Mr. Keating, in answer to questions as to where he lived and how he got hurt, that he got on the step of the car and the driver kicked him off. These statements were made five or eight minutes after the accident. Dr. Miller arrived within fifteen or twenty minutes, and he interrogated the boy as to how he got hurt, and in

answer the boy said he was on the front platform of the car, that he attempted to get off and the driver kicked him off and he fell under the car. These statements were detailed in evidence by Mr. Keating, his daughter and Dr. Miller, and the question is whether they are a part of the *res gestae.*

In *Harriman v. Stowe*, 57 Mo. 93, the plaintiff was injured about noon. Her physician called between one and four o'clock of the same day, when she stated to him how she got hurt, namely, by falling through a trap-door. This statement the physician related on the witness-stand, and this court held the evidence competent, because part of the *res gestae,* saying that the declaration and accident formed connecting circumstances. That case, it is urged by the plaintiff, goes far enough to admit the declarations made in the present case.

The case of *Brownell v. Railroad Co.*, 47 Mo. 240, was a suit instituted to recover damages for the death of the plaintiff's husband. There the declaration of Brownell, in reference to the switch, it is said, "grew directly out of and was made immediately after the happening of the fact," and it was held that the declaration was competent evidence for the plaintiff.

That case cites with approval *Ins. Co. v. Moseley*, 8 Wall. 397, which was an action on a policy of insurance. To show that the death of the insured was caused by an accident, the wife testified that her husband left his bed between twelve and one o'clock, that when he came back, he said he had fallen down the back stairs and almost killed himself. The evidence of the son was to the same effect; he also testified further, that on the day after the fall, his father said he felt badly, etc. This evidence was held to be competent for two purposes, first, to show bodily injuries and pain, and second, to prove that deceased fell down the stairs. In respect of the first it is said, such evidence must

relate to the present and not to the past. Anything in the nature of narration must be excluded. As to the second, it is said in substance, that generally the declarations must be contemporaneous with the event, yet the rule is not of universal application. Further on it is said: "Here the principal fact is the bodily injury. The *res gestae* are the statements of the cause made by the assured almost contemporaneously with its occurrence, and those relating to the consequences made while the latter subsisted and were in progress."

That court, as well as this, in the cases last cited, quote approvingly from *Hanover Railroad Co. v. Coyle*, 57 Pa. St. 402, where a peddler's wagon was struck and injured by a locomotive. The court said : "We cannot say that the declaration of the engineer was not a part of the *res gestae*. It was made at the time—in view of the goods strewn along the road by the breaking up of the boxes—and seems to have grown directly out of and immediately after the happening of the fact."

*Adams v. Railroad*, 74 Mo. 553, was an action by the plaintiff to recover damages for the death of her husband. Plaintiff proved by one witness that after the deceased was struck and after the train had stopped, two train-men, whom the witness took to be the fireman and engineer, came up, and one of them said to the other, "If you had stopped the train when I told you, you would not have killed him." The other replied, "It cannot be helped now ; it is too late." This court, after reviewing various authorities, stated its conclusion as follows :    "Were the declarations connected with the calamity as a cause or concomitant ?   Were they contemporary with the principal transaction, and illustrative of its character, or merely a subsequent narrative of how it occurred, or an explanation of how it might have been avoided ?   If the latter, as we think, they were wholly inadmissible, and the court erred in permitting the evidence to go to the jury."

This case was cited as an authority in the subsequent case of *Devlin v. Railroad*, 87 Mo. 545, but that case was quite different in its facts, as will be seen from the following statement made therein: "It does not appear that these statements made by the section foreman to the foreman of the road-house, were made while the foreman was transacting the business of the defendant."

*Vicksburg & Meridian Railroad v. O'Brien*, 119 U. S. 99, was a personal damage suit. A witness was permitted to testify, that between ten and thirty minutes after the accident he had a conversation with the engineer in charge of the locomotive, and that he, the engineer, said the train was moving at the rate of eighteen miles per hour. The court held that this evidence should have been excluded, four of the justices dissenting. The majority opinion is put upon the ground that the declaration did not accompany the act from which the injury arose, that it was a mere narration of a past occurrence, and therefore not a part of the *res gestae*. The dissenting justices say: "As the declaration was made between ten and thirty minutes after the accident, we may well conclude that it was made in sight of the wrecked train, and in the presence of the injured parties, and while surrounded by excited passengers. * * * The modern doctrine has relaxed the ancient rule, that declarations, to be admissible as part of the *res gestae*, must be strictly contemporaneous with the main transaction. It now allows evidence of them, when they appear to have been made under the immediate influence of the principal transaction, and are so connected with it as to characterize or explain it."

Greenleaf says: "The principal points of attention are, whether the circumstances and declarations offered in proof were contemporaneous with the main fact under consideration, and whether they were so connected with it as to illustrate its character." 1 Greenl. Ev., sec. 108.

Taylor says : "In all these cases the principal points of attention are, whether the *circumstances and declarations* offered in proof were *so connected with the main fact* under consideration as to illustrate its character, to further its object, or to form, in conjunction with it, one continuous transaction." 1 Taylor on Ev. ( 7 Ed.) sec. 588. The same author, after speaking of the change in the old rule, where there are connecting circumstances, goes on to say : "Still, an act cannot be varied, qualified or explained, either by a declaration which amounts to no more than a *mere narrative of a past occurrence,* or of an *isolated* conversation held, or an isolated act done, at a later period." *Ib.* sec. 589.

These authorities show that there is still some diversity of opinion, both as to the rule, and as to the application of a given rule. Care must be taken not to make the field of *res gestae* too large or too contracted. The better reasoning is, that the declaration, to be a part of the *res gestae*, need not be coincident, in point of time, with the main fact to be proved. It is enough that the two are so clearly connected that the declaration can, in the ordinary course of affairs, be said to be the spontaneous exclamation of the real cause. The declaration is then a verbal act, and may well be said to be a part of the main fact or transaction. Again, if the subsequent declaration and the main fact at issue, taken together, form a continuous transaction, then the declaration is admissible. Much, therefore, depends upon the nature and character of the transaction in question; for it may be, and often is, of a continuing character. It cannot be said that a mere subsequent declaration will of itself furnish a sufficient connecting circumstance.

Applying these declarations to the present case, it is clear that what the boy said as to how he got under the car, when first picked up, was properly received as evidence of the cause of his injuries. He was then at the

scene of the accident, surrounded by persons who witnessed the calamity, and his declarations then made were verbal acts, though made after the accident had happened.

But what he said after he had been removed to the house of Mr. Keating, after the persons connected with the accident had separated, and in answer to questions as to how he got hurt, should have been excluded. These answers were but narratives of what had transpired, made and intended as such. The time between the accident and making these declarations is short, it is true, but they are disconnected from the main fact. We do not understand any of the cases before cited to go far enough to admit these declarations, lest it be that of *Harriman v. Stowe*, 57 Mo. 93. It is to be observed that these statements, made at the house of Mr. Keating, were not offered for the purpose of showing that the boy was then suffering from the injuries, but for the purpose of showing the cause of the injuries. It was error to admit them in evidence.

2. Callahan a policeman, testified: "I heard a cry on the sidewalk. I heard a lady shout murder." This statement was repeated several times by this and another witness. Defendant's motion to strike out this evidence should have been sustained. The books report the case of the trial of Gordon for treason, where the cry of the mob who accompanied the prisoner on his enterprise was received in evidence. But in this case the woman had nothing to do with the accident. She saw the crowd that gathered around the car, and shouted "murder." This we understand was after the accident. Her shouts shed no light whatever on the real issue. *State v. Brown*, 64 Mo. 371; *State v. Sneed*, 88 Mo. 138.

3. Jessop, the driver, was a witness for defendant. For the purpose of impeaching the credit of this witness, it was competent to show that he had made statements out of court inconsistent with those made in

court, the proper foundation having been laid therefor, as was done in this case. The testimony of officer Morgan was received for this purpose and none other. The objection to it is without merit.

For the reasons before stated the judgment is reversed and the cause remanded for new trial. RAY, C. J., absent; the other judges concur.