HATTIE BENNETTE, Appellant, v. WALTER HADER and TOWNSEND HADER.—87 S. W. (2d) 413.

Division Two, November 5, 1935.

*Clif Langsdale, Fred Bellemere* and *Roy W. Rucker* for appellant.

*James S. Simrall, Lawson & Hale, Hook & Sprinkle* and *Inghram D. Hook* for respondents.

980

BOHLING, C.—Plaintiff seeks to recover damages for the alleged wrongful death of her husband, William Howard Bennette. The defendants, Walter Hader and Townsend Hader, his son, were the owner and operator, respectively, of the automobile in which plaintiff's husband was riding at the time of the accident resulting in his death. From a judgment for defendants, plaintiff appeals.

Plaintiff submitted her case to the jury on the negligent rate of speed of the Hader automobile.

The accident occurred about 2:30 P. M., June 19, 1930, on Highway No. 40 approximately forty miles west of Higginsville, Missouri, where the parties resided. David E. Zimmerman, who was ill, had requested Walter Hader, who consented, to take him to a hospital in Kansas City. The Lions Club of Higginsville had sponsored the treatment of a crippled girl in a Kansas City Hospital, and Mr. Bennette, as secretary of the club, had been authorized to attend to some business matters in connection therewith and return the girl to Higginsville. Messrs. Bennette and Walter Hader were members of the Lions club, and Mr. Hader, upon Mr. Bennette's request, consented to take him along and return the girl to Higginsville. The parties started from Higginsville about 1:10 P. M. in Mr. Hader's Studebaker sedan. Townsend Hader was driving, and with Mr. Zimmerman occupied the front seat. Mr. Bennette and Walter Hader were in the rear seat—Mr. Hader being on the right side. While some of plaintiff's witnesses testified that the speed of the Hader automobile was in excess of sixty miles an hour a mile east and fifty miles an hour one-half mile east of the accident, the defendant testified that the speed of their automobile was approximately thirty-five miles an hour, and that it was traveling between thirty-five and forty miles an hour as it neared the scene of the accident, the view to the west there being somewhat obstructed by a curve in the highway and a hill. However, an eastbound Cadillac automobile, traveling astride the center line of the slab at a high rate of speed, was

observed by the defendants as it topped a rise in the pavement, which was estimated at about one hundred and fifty to two hundred feet from the Hader automobile. The Hader automobile was turned to the extreme right of the slab when the automobiles were approximately one hundred and fifty feet apart. The two automobiles continued to approach each other in this manner, the Hader automobile slackening its speed to an estimated mileage of twenty-five miles an hour, until when about thirty feet apart, the Hader automobile was turned off the slab. It was, at the time on a slight downgrade. In passing, the Cadillac struck the left rear wheel or fender of the Hader automobile; and the front of the Hader automobile was caused to turn to the left or south and its operator lost control by reason of the impact. Some of plaintiff's witnesses testified that there was no Cadillac on the highway at the time and place involved. The Hader automobile continued down the shoulder of the slab for some distance, crossed the pavement to the south, and, crashing into several posts along the shoulder of the highway, came to rest with its wheels in the air and two of the posts through the top of the automobile. The distance the Hader automobile traveled after first leaving the slab was variously estimated, some of the witnesses putting it between seventy-five and one hundred and five feet. All of the occupants of the Hader automobile, with the exception of the driver who gripped the steering wheel, were thrown from the automobile. Mr. Bennette was thrown some twelve or fifteen feet from the automobile and expired within a few minutes. Other facts, essential to a determination of the issues presented, will be developed in the course of the opinion.

Over the objection and exception of plaintiff that the statement was self-serving and no part of the *res gestae* the court permitted Walter Hader to testify as follows: "I told my son that the car crowded us off the road." The evidence shows that Walter Hader was unconscious for four or five minutes after the accident; that he received a severe injury; that upon his regaining consciousness his son was by his side; and that he and his son went to Mr. Bennette, and, upon learning that Mr. Bennette was dead, Walter Hader made the statement. All this occurred, according to the witness, within just a minute "after he regained consciousness." Upon cross-examination, the witness testified, that his son was excited; that he made the statement because he wanted his son to know witness did not think it was the son's fault; that witness never thought it out; and that his son also knew it.

Plaintiff cites State ex rel. Bankers Life Co. v. Reynolds, 277 Mo. 14, 24, 208 S. W. 618, 620; Landau v. Travelers Ins. Co., 305 Mo. 563, 573, 267 S. W. 376, 378, and other like cases. In the Bankers Life Co. case the statement was made at least several days after the transaction to which it related (see 277 Mo. l. c. 23), and this court

considered it no part of the *res gestae*. In the Landau case, involving an insurance policy, the decision turned on whether insured's fall from a street car was accidental or intentional. The court held there was some element of discretion vested in trial courts in the admission of testimony of this nature, and upheld the exclusion of the testimony on the apparent reluctance of the insured to answer questions as to the cause of his fall and the apparent extortion, after a fashion, of the statement, which negatived the idea of its spontaneity.

As stated in Vaughan v. St. Louis & S. F. Railroad Co., 177 Mo. App. 155, 174, 164 S. W. 144, 151: "Each case must be decided in the light of its own facts to some extent, giving, however, heed to certain general principles applicable to the question in all such cases. The principles are, that to make the declaration admissible, it must be made under such circumstances as to show that it was not a mere narration of a past event, but was so connected with the cause of the accident as to form a part of the entire transaction and to grow out of it spontaneously, precluding the idea that it was the result of a design. While it must be contemporaneous with the main fact, it does not have to be precisely concurrent in time. . . . It is sufficient if the declaration is so clearly connected with the main fact to be proved that the former can be said to be the un-premeditated, spontaneous explanation of the cause." Leahey v. Cass Ave., etc., Ry. Co., 97 Mo. 165, 172, 10 S. W. 58, 60, after reviewing the authorities, states: "The better reasoning is, that the declaration, to be part of the *res gestae*, need not be coincident, in point of time, with the main fact to be proved. It is enough that the two are so clearly connected that the declaration can, in the ordinary course of affairs, be said to be the spontaneous exclamation of the real cause. The declaration then is a verbal act, and may well be said to be a part of the main fact or transaction. Again, if the subsequent declaration and the main fact at issue, taken together, form a continuous transaction, then the declaration is admissible." As stated in 16 Corpus Juris, section 1174, page 574:

"The ultimate test is spontaneity and logical relation to the main event, and where an act or declaration springs out of the transaction while the parties are still laboring under the excitement and strain of the circumstances and at a time so near it as to preclude the idea of deliberation and fabrication, it is to be regarded as contemporaneous within the meaning of the rule." In Brownell v. Pacific Railroad Co., 47 Mo. 239, 244, the admitted statement was made after the declarant had regained consciousness, and in State v. Stallings, 334 Mo. 1, 6(4), 64 S. W. (2d) 643, 645(6), away from the scene of the main fact and apparently after the declarant had recovered from being in a dazed condition and upon his first learning of the fact which evoked the statement. In the following cases the time elapsing

between the main event and the statement equaled or exceeded that between declarant's regaining consciousness and the statement in the instant case. [Vaughan v. St. Louis & S. F. Railroad Co., supra; Giles v. Missouri Pac. Ry. Co., 169 Mo. App. 24, 35, 154 S. W. 852, 855(5); State v. Stallings, 334 Mo. 1, 6(4), 64 S. W. (2d) 643, 644(6, 7); State v. Martin, 124 Mo. 514, 529, 28 S. W. 12, 15(9); State v. Hart, 309 Mo. 77, 88, 274 S. W. 385, 388(7); State v. Taylor, 330 Mo. 1036, 1045(5), 51 S. W. (2d) 1003, 1005(5).] The Leahey, Martin and Stallings cases, supra, fully discuss the issue, citing and quoting authorities.

The statement in the instant case was made "just a minute" after declarant became conscious, at the scene of the accident, while he was suffering pain, upon his first learning of the death of his companion, while parties were gathering at the scene, before the excitement had subsided, and without being planned or cogitated; and, under the cases cited, its admission in evidence was not error, as it apparently was the spontaneous result of the accident and resulting death upon the senses of the speaker rather than the result of premeditation, design or reasoning from the facts.

If the statement constitutes a part of the *res gestae*, the fact that it may be of a self serving nature does not render it inadmissible (see the statements in the Stallings, Vaughan, Giles, Brownell, Leahey cases, supra; Smith v. Southern Ill. & Mo. B. Co., 326 Mo. 109, 127, 30 S. W. (2d) 1077, 1085); for its admission in evidence is founded upon its trustworthiness arising out of the occasion of its utterance.

Other reasons exist for holding the admission of the testimony not error. Plaintiff elicited from some of her own witnesses testimony to the same effect, which defendant further developed upon cross-examination. This testimony went in without objection. A litigant may not complain of the admission of testimony over his objection, where like testimony has previously been admitted without objection. [Keyes v. Chicago, B. & Q. Railroad Co., 326 Mo. 236, 263, 31 S. W. (2d) 50, 62, citing cases; Reynolds v. Maryland Casualty Co., 274 Mo. 83, 103(4), 201 S. W. 1128, 1134(7).]

█ Defendants' instruction on the measure of damages, insofar as material, read:

"The jury is instructed, should it find for the plaintiff, that it can only allow such damages as the statute authorizes. The measure of damages it adopts is merely a compensatory one, that is, that which will make good the loss sustained. That loss must be a pecuniary loss, and be measured by that standard and arrived at as nearly as circumstances will admit. . . . . They must ascertain from the evidence the pecuniary loss, if any, sustained as nearly as they can approximate thereto. . . . To ascertain this value of the life or the loss sustained, the jury is not entitled to go outside of the evidence and indulge in mere speculation and conjecture not

984

reasonably made from the evidence, and justifiable thereby, but must found their estimate upon such facts and proof as tend to show the pecuniary extent of the loss sustained.''

Plaintiff's instruction on the measure of damages read:

''The court instructs the jury that if you find the issues for the plaintiff in this case, as defined in other instructions, you will, in assessing damages, if any, award her such sum, not exceeding $10,-000, as you find from the evidence will fairly and justly compensate her for all pecuniary loss, if any, which you find from the evidence she has sustained as a necessary result of the death of Howard Bennette.''

Plaintiff attacks the use of the word ''sustained'' in defendants' instruction; asserting the word ''sustained'' eliminated consideration of the element of plaintiff's future pecuniary loss. The statute (Sec. 3264, R. S. 1929, Mo. Stat. Ann., p. 3377) embraces any damages, of a compensatory nature, which may be estimated according to a pecuniary standard, whether present, prospective or proximate [Barth v. Kansas City Ry. Co., 142 Mo. 535, 556, 44 S. W. 778, 785; Tibbels v. Chicago, G. W. Ry. Co. (Mo. App.), 219 S. W. 109, 116; Polk v. Krenning (Mo. App.), 2 S. W. (2d) 107, 109(2)]. A determination of the correctness of the instruction is not essential to a ruling upon the issue. Whatever vice, of the nature suggested, may exist in defendants' instruction also existed to the same, if not greater, extent in plaintiff's instruction on the measure of damages. The instructions proceed upon the theory that the jury, if the finding be for plaintiff, should compensate plaintiff for such pecuniary loss as they might find from the evidence plaintiff sustained (defendants' instruction) or has sustained (plaintiff's instruction). The wording of plaintiff's instruction is identical in the verb used with the criticised instruction in the Barth case, supra. If plaintiff's instruction precluded the recovery of future pecuniary loss, and defendants also precluded such recovery, then plantiff may not complain; because ''appellants will not be heard to complain of an error or omission in respondents' instruction which is common to their own instruction'' [Meyer v. Drake, 324 Mo. 612, 633, 24 S. W. (2d) 116, 125(13), citing cases; Murphy v. Duerbeck (Mo.), 19 S. W. (2d) 1040, 1043(4), citing cases].

Another reason exists why this case should not be remanded on account of this instruction. Unquestionably, under it the jury were authorized to allow such damages as they believed plaintiff sustained up to the time of trial. The verdict was for defendants. A reading of the instruction shows that it was to be given consideration only in the event and after the jury found the issues for the plaintiff. Since juries are presumed to follow the instructions given by the court; the jury in the instant case never had occasion to consider this instruction. Therefore, even if the instruction be construed as con-

tended for by plaintiff, and the error had not existed in plaintiff's instruction, the error would have been harmless; for if no liability existed, plaintiff was not prejudiced [Schaefer v. St. Louis & S. Ry. Co., 128 Mo. 64, 74, 30 S. W. 331, 333; Feary v. Metropolitan St. Ry. Co., 162 Mo. 75, 98, 62 S. W. 452, 458; William v. Hyman-M Co., 277 S. W. 593, 595, citing cases].

One of defendants' instructions, in part, read: "The court instructs the jury that if you find and believe from the evidence that Townsend Hader in driving the automobile at the time and place of the accident, was exercising the highest degree of care." Plaintiff contends the words "at the time and place of the accident" precluded a consideration by the jury of the prior or antecedent negligence, if any, of defendants; relying upon Alexander v. St. Louis-S. F. Ry. Co., 327 Mo. 1012, 1021, 38 S. W. (2d) 1023, 1026, and Gray v. Columbia Ter. Co., 331 Mo. 73, 82, 52 S. W. (2d) 809, 813, to the effect that "the prior or antecedent negligence of neither plaintiff nor defendant enters into the humanitarian doctrine." Plaintiff's case went to the jury under the charge of alleged negligent speed. The cases cited do not rule the instant issue, and plaintiff has cited no case bearing directly thereon. We think the contention unjustly critical. Any reasonable interpretation of the phrase "at the time and place of the accident," necessarily embraces the whole transaction, including all facts of evidentiary value bearing upon the alleged negligent operation of the Hader automobile, whether such acts occurred at the beginning or the close of the entire transaction. In Lake Shore & M. S. Ry. Co. v. Johnsen, 135 Ill. 641, 652, 26 N. E. 510, 512, we find the following: "It is also said that the instruction confined the attention of the jury to the question whether or not the plaintiff was in the exercise of due care at the precise moment, or *punctum temporis,* when the car struck him. This is hypercriticism. The words 'at the time,' as used in the instruction, refer to the whole transaction or series of circumstances, from the time plaintiff reached the tracks to the time when he was injured, leaving it to the jury to determine whether he used due care before he stepped upon the unoccupied track and while he stood there." To the same effect is Lake Shore & M. S. Ry. Co. v. Ouska, 151 Ill. 232, 238, 37 N. E. 897, 898.

We find no merit in the assignment.

Plaintiff contends that the testimony of defendants concerning the speed of the Hader automobile and the effect of the slight collision with the eastbound automobile to be so wholly at variance with well known physical laws and common observation and experience that such statements do not amount to substantial evidence of the facts testified to and cannot be accepted as the basis of a verdict. This is based upon the proposition an automobile, with brakes in good working order, traveling at a speed of twenty-five miles an

hour can be stopped in much less distance than fifty to seventy-five feet, and would not mow down four eight-inch posts, swerve to the right, then to the left again, knock down another post and overturn with such force that still other posts would pierce its top. The latter contention is based upon the testimony of some of plaintiff's witnesses as to the size of the posts and the number of posts knocked down.

The facts upon which plaintiff founds her contention overlooks other testimony in the record. Defendants, having prevailed below, are entitled to a consideration of the substantial evidence in its most favorable light to them. [Cluck v. Abe, 328 Mo. 81, 88, 40 S. W. (2d) 558, 561(8); Burgess v. Magers (Mo.), 24 S. W. (2d) 1042, 1044(3); Eckery v. Byng (Mo. App.), 45 S. W. (2d) 924, 925(2).]

While courts are not such slaves to the forms of procedure as to surrender their own intelligence to an array of witnesses testifying to an impossibility and are not required to give credence to a statement that would falsify well known laws of nature though a cloud of witnesses swear to it [Sexton v. Metropolitan St. Ry. Co., 245 Mo. 254, 272, 149 S. W. 21, 25, quoting Weltmer v. Bishop, 171 Mo. l. c. 116, 71 S. W. 169]; only in those extraordinary cases where deductions from physical laws and facts so clearly and irrefutably disprove the testimony of witnesses that reasonable minds may not entertain any other conclusion are courts justified in ruling sworn testimony inherently unbelievable and impossible [Dempsey v. Horton, 337 Mo. 379, 84 S. W. (2d) 621, and cases there cited].

Plaintiff's contention that the Hader automobile could have been stopped in much less distance than fifty to seventy-five feet overlooks the testimony to the effect that the automobile was traveling down grade; and that the impact of the Cadillac caused its operator to lose control of the automobile. There is nothing so unusual about an automobile traveling at a speed of twenty-five miles an hour on a slight down grade, traversing a distance of fifty to seventy-five feet, while out of control of its operator, as to call for the application of the physical facts rule.

While some of plaintiff's testimony established that the highway posts were eight inches in diameter; that three or four of these posts were broken off at the top of the ground, that the next post or two were not struck, and the next post was broken off or bent over, and the automobile was turned over and two posts pierced its top; there was other testimony, given by witnesses residing within a few hundred feet and within view of the scene of the accident, to the effect that the posts were probably six inches through, and stood about three feet above the ground, and about two feet in the ground; that they noticed no posts broken off, although they thought one was out of the ground; and that three or four posts were bent over. Thus, the physical facts upon which plaintiff bases her contention stand impeached, and the point, under the authorities referred to, is ruled against plaintiff.

The judgment of the trial court is affirmed. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.