**Charles Oliff WREN, Respondent,**

v.

**ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation, Appellant.**

**No. 47394.**

Supreme Court of Missouri,

Division No. 1.

March 14, 1960.

93

Frank B. Green, St. Louis, for appellant.

·Donald L. Bland, Clayton, for respondent.

HOLMAN, Commissioner.

On the afternoon of March 7, 1956, plaintiff, Charles Wren, sustained certain personal injuries when the truck he was driving was struck from the rear by one of defendant's buses. In this action for damages he obtained a verdict in the sum of $10,000. Defendant has appealed from the ensuing judgment and here contends (1) that the court erred in overruling its motion for a directed verdict because the only evidence to support the submission was the erroneously admitted hearsay statements alleged to have been made by defendant's driver following the collision and (2) that the court erred in refusing to permit defendant to show to the jury a motion picture taken of plaintiff, while working, which

would have contradicted and impeached plaintiff's testimony relating to his physical disability.

Plaintiff was employed as a truck driver in St. Louis, Missouri, and on the occasion in question was engaged in making a delivery for his employer. He was driving north on Euclid Avenue and his truck was the last vehicle in a line of cars which would move and stop intermittently when the lead car would stop in obedience to the boulevard stop sign located at Laclede Avenue, the next intersection. While plaintiff's truck was stopped in that line of traffic it was struck from the rear by the front end of one of defendant's buses. The truck was equipped with a hydraulic tail gate which was operated as a "lift" in loading and unloading the truck. At the time of the instant occurrence the tail gate was down (on a level with the truck bed) and extended out beyond the rear of the bed for approximately three feet. When the bus struck the tail gate extension the front end of the bus was pushed in for a distance of several inches and the headlights were knocked out of their position in the body of the bus.

The collision caused plaintiff to be "thrown around in the cab" of the truck. He immediately got out of the left door of the cab and walked around the front of the truck and back to the point of collision where he observed the damage and then proceeded to the door of the bus. The bus driver was still seated at the steering wheel. He opened the bus door and plaintiff asked him, "What happened?" Defendant objected to the witness relating any statement made by the bus driver on the ground that such was hearsay and not within the res gestae. Upon further inquiry plaintiff stated that his conversation with the bus driver occurred approximately three or four minutes after the impact. The objection was overruled and plaintiff stated that the driver said "that the brakes on the bus failed, and that is what caused him to hit the back end of the vehicle." Within "five or ten minutes" after the collision a police car arrived and the officers made an investigation, including an interview with the bus driver, which, because it had started to snow, was conducted in a nearby garage. Over the objection of defendant one of the officers, Eugene Kirk, testified that the bus driver said "his brakes wouldn't hold." There was evidence that plaintiff received a whiplash injury to his neck and that the use of his right hand and right arm had been impaired.

We will first consider the contention that the court erred in ruling that the statements of the bus driver were admissible as a part of the res gestae. In that connection it should be noted that plaintiff's case was submitted to the jury upon the hypothesization that "defendant had failed to provide its motor bus with adequate brakes kept in good working order, and that in so failing, defendant was negligent * * *." There was no evidence concerning the brakes on the bus except the foregoing statements of the bus driver. It is therefore apparent that if said statements were not admissible the plaintiff failed to make a submissible case upon the theory of negligence which plaintiff elected to submit.

■ In approaching the question as to the admissibility of statements as a part of the res gestae, "the utterance should always be regarded as presumably inadmissible. This follows from the rule against hearsay. If the utterance is admissible it is as an exception to that rule. As this exception is based upon the sanction of a post accident tension, that sanction must be affirmatively shown." Annotation 163 A.L.R. 15, 92. The burden rests upon the party offering the declaration to show facts which would warrant its admission as a part of the res gestae. Woods v. Southern Ry. Co., Mo.Sup., 73 S.W.2d 374.

The applicable general rule is well stated in 20 Am.Jur., Evidence, § 662, p. 553, as follows: "Res gestae may broadly be defined as matter incidental to the main fact and explanatory thereof and may include acts and words which are so closely con-

nected therewith as to constitute a part of the transaction; and such acts and words must be spontaneous and so related to the occurrence in question as reasonably to appear to be evoked and prompted thereby. Stated differently, the term 'res gestae' comprehends a situation which presents a startling or unusual occurrence sufficient to produce a spontaneous and instinctive reaction, during which interval certain statements are made under such circumstances as to show lack of forethought or deliberate design in the formulation of their content. Statements which conform to these requirements and which in some way elucidate, qualify, or characterize the act in question are admissible in evidence as a distinct and separate exception to the hearsay rule." In discussing the res gestae rule we have recently said: " 'The essential test of this class of statements is spontaneity', and in determining whether the statement is admissible under this rule 'the true test is neither the time nor the place of the statement but whether [under the circumstances] it is a spontaneous statement produced by the event itself.' Sconce v. Jones, 343 Mo. 362, 121 S.W.2d [777], 778, 781." Roush v. Alkire Truck Lines, Mo.Sup., 299 S.W.2d 518, 522. For other discussions of the rule and its application to various factual situations see Meyers v. Smith, Mo.Sup., 300 S.W.2d 474; Wilson v. Toliver, 365 Mo. 640, 285 S.W.2d 575; Rosser v. Standard Milling Co., Mo.Sup., 312 S.W.2d 106; Gough v. General Box Co., Mo.Sup., 302 S.W.2d 884; Sconce v. Jones, 343 Mo. 362, 121 S.W.2d 777, and Bennette v. Hader, 337 Mo. 977, 87 S.W.2d 413, 101 A.L.R. 1190.

A consideration of the facts shown in the case at bar, in the light of the foregoing authorities, has caused us to conclude that the statements of the bus driver were not admissible under the res gestae exception to the hearsay rule and hence their admission in evidence constituted an abuse of the trial court's discretion and was reversible error.

Counsel for plaintiff seems to have been of the opinion, in which the trial court apparently concurred, that the fact that those statements were made within a period of five minutes following the collision was, ipso facto, sufficient to warrant their admission in evidence. That is clearly an erroneous view. The fact that an utterance is made a very short time after the event will, in and of itself, have little weight in producing an affirmative conclusion that it is admissible. "The lapse of time involved is material mainly as evidence of lack of spontaneity." Monical v. Armour and Company, Mo., 307 S.W.2d 389, 392.

The fatal deficiency in plaintiff's effort to carry his burden of showing a basis for the admission of the statements is, as we view the evidence, the complete absence of any proof tending to show the essential element of spontaneity. For convenience, we will consider only the more favorable statement which was made to plaintiff before the arrival of the police. In discussing the evidence it should perhaps be mentioned that the utterance was given in response to a question asked by plaintiff. While that alone would not cause it to be inadmissible it is a factor which, we think, tends to show a lack of spontaneity.

In most of the cases of this type wherein res gestae utterances have been held admissible there has been a major collision or serious accident which has resulted in death or serious (or at least painful) injury to one or more of the participants. In those instances there is usually a terrific impact resulting in demolition or considerable damages to the vehicles involved. Those factors almost invariably cause the participants (and sometimes bystanders) to suffer shock, tension and excitement which will often bring forth immediate, exclamatory utterances, obviously spontaneous, which, if relevant, are admissible under the res gestae exception to the hearsay rule.

But the situation presented in the case before us is far different. The occurrence appears to have been a relatively minor rear end collision. There was no evidence that the bus driver or any of the passengers in the bus had sustained any injuries at all and

there was no outward appearance of injury to plaintiff. The truck did not appear to have been damaged and the damage to the bus was not extensive. There was no showing that the bus driver was excited or under the influence of shock or tension. He remained in his seat and apparently reflected upon the situation for three or four minutes and when plaintiff appeared at the bus the driver opened the door and gave the questioned statement in answer to an inquiry by plaintiff. Upon cross-examination of plaintiff the following appears: "Q. Would you tell us, the bus operator, how he appeared at the time that you talked to him? Was he all excited and worked up? A. No, sir, he didn't seem to be, no, sir. Q. Rather calm? A. Well, I would say it is just an ordinary—as a person would after an accident. Q. You weren't excited and all worked up yourself? A. No, sir." Plaintiff points to the answer that the bus driver was "as a person would [be] after an accident" as indicating that the driver was suffering from shock and excitement. That conclusion would be speculative and is certainly not warranted in view of the positive testimony of plaintiff that defendant's driver did not seem to be "excited and worked up." In summary, as we view the evidence, the statement in question was not an exclamatory, spontaneous utterance produced by pain, excitement, shock or tension, but, on the contrary, was a calm, matter-of-fact response to plaintiff's inquiry and constituted a recital concerning a preceding event which was hearsay and not admissible as a part of the res gestae.

In support of his contention that the statements were admissible as a part of the res gestae plaintiff has cited Lynch v. Missouri-Kansas-Texas R. Co., 333 Mo. 89, 61 S.W.2d 918; Leahey v. Cass Ave. & F. G. R. Co., 97 Mo. 165, 10 S.W. 58; Vaughan v. St. Louis & San Francisco R. Co., 177 Mo. App. 155, 164 S.W. 144; Bennette v. Hader, supra, and Legger v. Great Northern Life Ins. Co., Mo.App., 216 S.W.2d 106. Those cases do not aid plaintiff. In each (except the Legger case where declarant had been painfully injured in a fall) the person making the statement had been involved in a serious accident and was suffering from pain, shock or excitement at the time of the utterance. Those cases are thus to be distinguished from the instant situation.

■ As heretofore indicated, since the statements of the bus driver were not admissible, the plaintiff failed to make a submissible case on the theory upon which he chose to submit his case to the jury. We have concluded, however, that in the exercise of a sound judicial discretion we should not reverse the judgment outright but should remand the case for a new trial. "This court has often quoted with approval the statement in Smith v. Terminal R. R. Ass'n of St. Louis, Mo.App., 160 S.W.2d 476, 479, that 'The furtherance of justice requires that a case should not be reversed without remanding unless the appellate court is convinced that the facts are such that a recovery cannot be had.'" Reece v. Reed, Mo. Sup., 326 S.W.2d 67, 72. There are certain restrictions upon that rule but none are applicable here. See Smith v. St. Louis Public Service Co., 364 Mo. 104, 259 S.W.2d 692. Upon a retrial, if plaintiff is unable to present evidence which would make a submissible case upon the theory of defendant's failure to provide the bus with adequate brakes, it is likely that he can make a submissible case upon some other theory.

■ Since the case will probably be retried we should briefly discuss the contention that the court erred in refusing to permit the showing of the motion pictures which purport to depict, on three different occasions, plaintiff's actions while working. The movies were taken by Norman Lee Adkins, a private detective, who testified (out of the presence of the jury) as to the technical details and the circumstances under which the pictures were taken. The film was shown to the trial court, in the courtroom, during a noon recess. Plaintiff's objection to the showing of the film to the jury was sustained by the court as indicated by the following: "The court: Objection

is sustained on the ground that the movies are too faint to accurately portray what is going on and don't show the weight of anything that he is lifting, don't plainly show what he is doing, that is, in the court's view, and in the court's opinion would not be—would be confusing and misleading rather than helpful to the jury." Thereafter, during the making of defendant's record on the question, Earl Perricone, the projectionist who exhibited the film, testified that he had been employed as a projectionist for ten years and that the film "is above average definition and character, but due to the light in the room you lost a great deal of definition in the film. Had it been shown in a darker room, pictures blown up larger, you would have gotten a much clearer and brighter picture."

The film was shown to us at the time this appeal was argued in this court. We were of the opinion that the pictures, as projected on the screen, were reasonably clear, and, in a number of instances showed plaintiff using his right hand and arm in a manner which would tend to contradict plaintiff's testimony concerning his ability to use the same. In the circumstances under which we viewed the film we are of the opinion that it was instructive evidence which was relevant as tending to impeach plaintiff's testimony and diminish his recovery and hence was admissible in evidence. Steele v. Goosen, Mo.Sup., 329 S.W.2d 703. It may be that the trial court properly exercised its discretion in excluding the film since, under the conditions existing when it viewed the film, the scenes may have been so faint and indistinct they did not properly show plaintiff's activities. However, we suggest that upon another trial, if it is not possible or practical to darken the courtroom to the extent necessary for a reasonably clear showing of the pictures, the court, jury and other participants may be able to move temporarily to another room in the court building where the conditions may be such that the film can be projected under more favorable circumstances.

Reversed and remanded.

COIL and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.