Margaret HUSTON, Appellant,

v.

William T. HANSON and Hanson Mobile Homes, Respondents.

No. 48670.

Supreme Court of Missouri, Division No. 1.

Feb. 12, 1962.

S. David Trusty, Arthur C. Popham, Jr., Kansas City, Popham, Thompson, Popham, Trusty & Conway, Kansas City, of counsel, for respondents.

Albert J. Yonke, Kansas City, for appellant.

HYDE, Judge.

Action for $150,000.00 damages for personal injuries. Verdict for defendants and plaintiff has appealed. Both defendants had counterclaims, the corporate defendant for damages to its automobile involved and the individual defendant for personal injuries, on which the jury found for plaintiff and they have not appealed. We will refer to the individual defendant as the defendant.

Plaintiff was injured when the Cadillac car occupied by her and defendant went off the highway after striking another car. Plaintiff's brief says: "The only issue in

this lawsuit (other than damages) was whether plaintiff or defendant, William Hanson, was the driver of the Cadillac at the time of the accident." This issue was squarely put to the jury, the main instruction (No. 1) authorizing a verdict for plaintiff (given at plaintiff's request) requiring a finding that defendant was driving. There is no claim of error as to any instructions except Instruction 7, a cautionary instruction not submitting any facts. Therefore, it is only necessary to say here that plaintiff testified that defendant was driving and defendant testified that plaintiff was driving; and that the testimony of Harriett Klein, who was riding in the car struck by the Cadillac, corroborated defendant. However, there was another instruction (No. 13) telling the jury that if they were "unable to determine and unable to make a finding as to who was driving the Hanson car at the time plaintiff claims to have been injured, then plaintiff cannot recover on her claim, and the defendants cannot recover on their counterclaim." Apparently from their verdict, this was the jury's view.

Plaintiff's first claim of error is the admission of statements made by defendant at the scene of the accident, saying they were hearsay, self-serving, legal conclusions, unresponsive, prejudicial and not part of the res gestae. This refers to the testimony of the witness Rogoff who was driving the car struck by the Cadillac. At the place of this occurrence, Highway 50 is a four-lane divided highway on which both cars were going in a westerly direction toward Kansas City. The two cars involved were on the north (westbound) lanes. The two south (eastbound) lanes were 89 feet south of the north lanes but 24 feet lower. The Cadillac went off the north pavement, over the embankment, and landed on its wheels in the ditch on the north side of the south lanes. Rogoff said he stopped his car off the pavement within 150 feet from the place where it was struck, ran down the embankment, followed by Miss Klein. They found defendant with

his head in the ditch, at the right of the Cadillac, and with his feet still in the car. Rogoff estimated he got there within 45 seconds after the collision. Plaintiff was in the car under the steering wheel impaled on the gear shift lever. Rogoff said of defendant: "He asked, 'How are the people, where are the people in the other car?' I said, 'I am here.' And then he said to the effect, 'I am sorry, it was her fault,' a number of times. He was conscious at this time. I would say possibly within ten minutes he did go into a state of shock, but before he went into a state of shock he repeated that a number of times, saying, 'I am sorry, I am sorry. It is her fault.'" Miss Klein's testimony (by deposition) was: "And he was laying there and he kept saying, 'What happened to the other car? What happened to the other people?' We tried to tell him we were the other people and he was more or less incoherent for a second and then he seemed to realize what happened and he kept saying, 'Don't blame the other people. She lost control of the car.'" As to defendant's condition Rogoff said: "Then he started to shudder. To me, I imagine, going into a state of shock. Very cold, and so forth." Miss Klein said he had the appearance of having a chest injury and was bleeding but was "coherent at first." Defendant had a serious concussion of the brain and was in the hospital for seven days, because of this and other injuries.

The only objection made at the trial, to Rogoff's testimony about this, with the court's ruling, was as follows: "Mr. Yonke: I am going to object to that for the reason it is hearsay, made out of the presence of the plaintiff and self-serving. The Court: The objection will be overruled on the ground that the statement is res gestae." The ground stated in plaintiff's motion for new trial concerning this testimony of Rogoff was as follows: "2. Because the Court erred in improperly and over the objection of plaintiff permitting Witness Martin Rogoff and Witness Harriett Klein Sklar, by her deposition, to tes-

tify concerning the statements and remarks made by defendant, William Hanson, at the scene of said collision; that said remarks and statements of defendant, William Hanson, constituted hearsay evidence, were self-serving statements, not a part of the res gestae and made at a time when plaintiff could not because of her physical condition refute same."

The objection made to Miss Klein's testimony hereinabove set out was: "I am going to object to the rest of that answer because it is hearsay, made outside the presence and hearing of the plaintiff, and is a self-serving statement by the defendant, and not an admission against interest by him, and prejudicial to the plaintiff." In the motion for new trial, it was said that her answer "was immaterial and irrelevant; was hearsay, was self-serving, not responsive to the question, not an admission against interest by defendant, not part of the res gestae and highly prejudicial to plaintiff."

█ Therefore, we can find no error in the ruling of the court that this evidence was admissible as res gestae. While the part of the statement of Rogoff about "fault", which came in after the ruling, may be classed as a conclusion, no such objection was made either at the trial or in the motion for new trial; and after his answer no motion to strike was made on this or any other ground. In 88 C.J.S. Trial § 155, p. 302, it is said: "As a general rule testimony consisting of mere conclusions of the witness must be considered and given its due probative value, when admitted without objection, and such evidence will be sufficient to establish a fact, support a finding based thereon, and may support a verdict." It is not necessary to go that far in this case because there was sufficient evidence to support a verdict for defendants on their counterclaims without these statements, so they were only corroborative of other evidence supporting the claim that plaintiff was driving rather than being essential to make a jury case for them.

Furthermore, the issue in this case was not the "fault" of the driver but was: who was driving? As said in plaintiff's brief: "There was no real issue as to the negligence of the driver." (The Cadillac came up behind the Rogoff car at high speed, estimated up to 90 miles per hour, swerved to the left off the pavement, then came back sharply to the right striking the Rogoff car and then went to the left over the embankment.) The testimony of Miss Klein said nothing about plaintiff's "fault" but was "she lost control of the car." A similar statement ("a car crowded us off the road") was held admissible in Bennette v. Hader, 337 Mo. 977, 87 S.W.2d 413, 101 A.L.R. 1190. "The essential test of this class of statements is spontaneity." Sconce v. Jones, 343 Mo. 362, 121 S.W.2d 777, 781. As stated by Wigmore: "This general principle is based on the experience that, under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock." 6 Wigmore 135, Sec. 1747. (See also Monical v. Armour & Co., Mo.Sup., 307 S.W.2d 389, 392; Cummings v. Illinois Central R. Co., 364 Mo. 868, 269 S.W.2d 111, 118, 47 A.L.R.2d 513; Smith v. Southern Illinois & Missouri Bridge Co., 326 Mo. 109, 30 S.W.2d 1077, 1086.) Our conclusion is that defendant's statements were admissible under this principle.

█ Plaintiff also claims error in permitting defendant to show a prior consistent statement of witness Rogoff in accord with his testimony at the trial after Rogoff had admitted, on cross-examination, making a statement inconsistent with his testimony. This was concerning the res gestae statements ("I am sorry, it was her fault") which Rogoff testified were made by defendant several times at the scene of the accident. On cross-examination, Rogoff was asked about statements he made to

plaintiff's counsel, taken by a court reporter on November 25, 1957. After Rogoff said he did not remember the statements he made he was further cross examined, as follows:

"Q Then I will ask you whether or not you made this answer to this question: 'Did he get up or was this while he was lying down? Answer: No, he never did get up as far as that goes. And he mentioned several times that it was their fault, and he kept saying he was sorry, and I didn't say much to him, and that is about—he didn't say too much.' Did you make that answer to that question back on November 25, 1957? Would you like to look at that one? A I can't deny it, sir. Q Well, isn't it a fact that he said it was their fault, not her fault? Your memory was a lot better in November, 1957, right after the accident, than it is three years later, isn't it? A Certainly. My memory was certainly better at that time. Q So you did make this answer to this question, did you not? A Yes, at that time. Q Did you answer this question with this answer: 'Did he say anything about who was driving the automobile? Answer: No, I don't believe so. I can't remember any exact statements as far as that goes about saying—only as far as the fault of the automobile.' Did you make that answer to that question? A As I say, I can not recall at this present time. If I signed that, and said I made those statements—

"Mr. TRUSTY: Wait a minute. Did you sign it?

"The WITNESS: I don't know.

"Q (By Mr. Yonke) I don't believe you signed it, but I can bring the court reporter in. A No, I am not saying—at that time I was questioned and if that was my answer, that was the answer. * * * Q Did you say all you remember he said was he was sorry, it was their fault, did you make that answer to that question? A As I say, I can not deny it if this was recorded at that time. As to my saying it, I can not deny it. Q Well then, isn't that the true fact, that he didn't say who was driving, whether he was driving or the lady was driving at that time, and all he said was that he was sorry, isn't that what he did say at that time, as you remembered back in November, 1957? A As far as I remember, from what I heard from Mr. Hanson when he asked about the other party, I said, 'I am here,' he said, 'I am sorry,' he said, 'It was her fault.' That is what I remember. Q So you are saying none of these things are correct that are in this statement, none of these answers that you made to these questions are correct, is that what you are saying? Isn't it more likely you would have remembered back in November, 1957, better than you do now? A It is possible I would remember. I also made a statement the day after the accident. Q You are not denying you made these statements? A I am not denying it, no."

On redirect examination, it was shown that in a statement taken October 11, 1957 (the day after the accident) Rogoff stated of defendant: "[H]e asked about the other people, and I said, 'I am here,' (indicating), and he said, 'I am sorry it happened.' He said, 'It was her fault.' That is what he said. He repeated that a number of times." Plaintiff objected to this as improper rehabilitation and this is the basis of her claim of error.

Plaintiff relies on Williams v. St. Louis Public Service Co., Mo.App., 245 S.W.2d 659, 666, holding that a prior consistent statement becomes inadmissible where the witness admits making the inconsistent statement because the prior consistent statement is admissible only to rebut the truthfulness of the impeaching evidence, namely, the inconsistent statement which it

is claimed was made by the witness. See 4 Wigmore 198, Sec. 1126. However, in that case, the inconsistent statement was admitted by the witness to have been made deliberately and made falsely for the witness' own purpose. In that case, the witness had impeached herself by her own admission of intentionally making a false statement and no other statements could change that fact or remove such self-impeachment. It is evident that we have here a different situation, more like that in McElhattan v. St. Louis Public Service Co., Mo.Sup., 309 S.W.2d 591, 595, where the witness "testified that he did not remember making the inconsistent statement." It is our view, that this is the effect of Rogoff's testimony taken as a whole. Furthermore, the statement "it was their fault" was not completely contradictory of the statement "it was her fault" because by it defendant was not placing all the blame on himself and it appears from all the evidence that mainly defendant was making it plain he was placing no blame on the people in the other car involved. Certainly Rogoff did not admit intentionally making a false statement and could have inadvertently used a different word in this statement. Our rule as to rehabilitation has been more liberal than that of many states. See annotations 140 A.L.R. 21, 75 A.L.R.2d 909; 58 Am.Jur. 461, Witnesses, Secs. 825–833; 98 C.J.S. Witnesses Secs. 624–626, p. 637; see also cases cited in the Williams case (245 S.W.2d 1. c. 664) and the McElhattan case (309 S.W.2d 1. c. 594). We hold there was no error in admission of the prior consistent statement under the circumstances shown.

■ Plaintiff claims error in unduly limiting the cross-examination of Miss Klein as to matters plaintiff says went to show her bias and prejudice, citing State v. Pigques, Mo.Sup., 310 S.W.2d 942; Houfburg v. Kansas City Stock Yards Co. of Maine, Mo.Sup., 283 S.W.2d 539; Joice v. Missouri-Kansas-Texas R. Co., 354 Mo. 439, 189 S.W.2d 568, 161 A.L.R. 383, and similar cases. Miss Klein's testimony was by deposition and the court, in chambers, went over the deposition with the lawyers, ruled on objections, and indicated the parts that could be read and the parts that could not. It appeared that Miss Klein had made a claim for her injuries and defendant's lawyers represented the Insurance Company having the liability insurance on the Cadillac. (So far as appears Miss Klein's injuries would be covered regardless of whether defendant or plaintiff was driving the car.) We have read the cross-examination and the court's rulings and find no prejudicial error in them. From the cross-examination admitted it was shown that Miss Klein came from California (where she was living after being married) to give her deposition and that defendant's lawyers arranged for payment of the expense of this trip. It was also shown that Miss Klein had not hired a lawyer but that she and her mother had talked to one of defendant's lawyers about her claim (before knowing he was representing defendant); that he was the only lawyer she had talked to about her claim; and that she had gone to a doctor designated by him for examination. Plaintiff's counsel sought to go into more detail about this but some of the excluded cross-examination would have tended to inject the matter of insurance by showing as a requirement of settlement she was to be examined by doctors designated by the company and other matters concerning insurance. A lot of it concerned the extent of Miss Klein's injuries, their treatment and the extent of her later activities, which would have been relevant in a case brought by her but seem wholly immaterial in this case. Plaintiff's contention that this was relevant on the issue of her ability to see the persons in the Cadillac at the time of the collision cannot be sustained because this testimony showed that Miss Klein did not notice any discomfort from the accident until the next day (the basis of the trial court's ruling) and because her opportunity to see who was in the Cadillac necessarily was prior to sustaining injuries from the collision. The trial court has

broad discretion as to cross-examination with reference to collateral matters. (Siegel v. Ellis, Mo.Sup., 288 S.W.2d 932, 940; Hilton v. Thompson, 360 Mo. 177, 227 S.W.2d 675, 682; Bertke v. Hoffman, 330 Mo. 584, 50 S.W.2d 107, 109.) Our conclusion is that there was no abuse of discretion as to these matters.

■ Plaintiff also claims error in permitting defendant's counsel to pursue a line of questioning of a highway patrolman leading to questions that would be improper. This was cross-examination of the patrolman, called by plaintiff, who had come to the scene of the accident. He was asked if he tried to make an investigation to determine, from the people there, who was driving the Cadillac. (He had previously been asked on direct if he determined who was driving the other car and stated it was Rogoff.) The court permitted him to be asked if they told him anything about who was driving the Cadillac and he said they did. He was then asked, "Who did they tell you was driving the Cadillac" and the court sustained plaintiff's objection that this called for hearsay. The patrolman's report then was offered but was refused on plaintiff's objections of hearsay and conclusions in its contents, made out of the presence of the jury. Plaintiff relies on Myers v. Moffett, Mo.Sup., 312 S.W.2d 59. However, in that case, the trial court sustained a motion for new trial, where defendant's counsel, although the court had several times sustained objections to such questions and told counsel to refrain from asking such questions, "persisted in pursuing the same lines of interrogation" and "by overriding the trial court's rulings, defendant's counsel was, by his improper questions over and over again stressing and in effect insinuating or obliquely arguing to the jury a decisive probative effect" of matters the court had correctly ruled improper. We held that these actions, together with improper jury argument, were sufficient grounds for sustaining the court's order for a new trial. We have no such situation here and the trial court, with the best opportunity to judge the effect of this incident, overruled the motion for new trial. (See also Ryan v. Campbell "66" Express, Inc., Mo.Sup., 304 S.W.2d 825. 829.) We hold there was no prejudicial error shown in connection with this cross-examination.

■ Plaintiff also claims error in refusing its offer, as rebuttal evidence, of records of the U. S. Weather Bureau to show that on October 10, 1957, about 10:00 P.M. it was completely overcast. Plaintiff said he was offering it in rebuttal of the testimony of Miss Klein but she had only said she did not remember about the darkness but "it was nighttime * * * 10:30"; and that she did not remember if the moon was out. Defendant's witness Rogoff testified: "It was a dark night." Plaintiff's witnesses, Dr. Smith and the patrolman both said it was dark; the patrolman also said: "It was clear and dry." The court ruled this record was not rebuttal in view of Miss Klein's statement that she did not remember. Plaintiff now says it was in rebuttal of Miss Klein's "testimony that she could and did see the driver of the Cadillac although it was dark." (Actually she only said she saw a man at the right window of the Cadillac.) "A plaintiff is not entitled as of right, on the stage of rebuttal, to the admission on his behalf of evidence merely cumulative or confirmatory of that already put in by him in his original case." Peters v. Dodd, Mo.Sup., 328 S.W.2d 603, 610. The court's ruling was technically correct so there is no basis for plaintiff's claim of error.

■ Plaintiff also claims error in sustaining defendant's objection to part of his argument but this is without merit because in stating his view as to the instruction on her burden of proof, counsel left out the element of credibility. He recognized this himself when the objection was made and restated it to include credibility.

■ Plaintiff further claims error in giving Instruction 7, at defendant's re-

quest, in which it was stated in the first sentence: "* * * it is your duty to decide the issues strictly upon the evidence introduced before you and in strict accordance with the written instructions of the Court, * * *." The second sentence cautioned against being affected by passion, prejudice or sympathy. Plaintiff says the clause "strictly upon the evidence" deprived her of the inferences to be drawn from the evidence. This is a most strained construction and as defendant points out Instruction 1, given at plaintiff's request as the main verdict-directing instruction, commenced: "* * * if you find and believe from all the evidence in the case * * *". Likewise Instruction 2, given at plaintiff's request concerning award of damages, commenced: "* * * if under the evidence and other instructions given to you in this case * * *". Also Instruction 5 stated plaintiff's burden of proof as "the greater weight of the credible evidence"; and Instruction 6, concerning burden of proof, stated: "* * * by the term 'greater weight or preponderance of all the credible evidence in the case' is meant that evidence which is most convincing to the minds of the jury." Both were given at plaintiff's request and thus no instruction requested by plaintiff said anything about inferences. However, Instruction 9 stated plaintiff's burden of proof as "by the greater weight of the credible evidence and all reasonable inferences deducible therefrom"; and Instruction 13, concerning burden of proof, stated: "[Y]ou can not base a verdict or any finding exclusively upon guesswork, surmise and speculation outside of and beyond the scope of all the credible evidence in the case and all reasonable inferences deducible therefrom." Both were given at defendant's request. Therefore, when the instructions are all considered, and in view of the submission plaintiff requested, the complaint made cannot be held to show prejudicial error.

Plaintiff finally says: "Although it might be said that any of the matters complained of heretofore would not alone be sufficient to warrant the granting of a new trial, plaintiff contends that all of these matters taken together constitute reversible error," citing Myers v. Moffett, Mo.Sup., 312 S.W.2d 59, 65; Ryan v. United Parcel Service (2 Cir.), 205 F.2d 362, 365; Faught v. Washam, Mo.Sup., 329 S.W.2d 588, 604. This contention cannot be sustained because we have determined that plaintiff's claims of error cannot be sustained and that several of them are wholly without merit.

The judgment is affirmed.

All concur.